## GEVIRTZ v. COMMISSIONER OF INTERNAL REVENUE.

### No. 17.

Circuit Court of Appeals, Second Circuit.

Nov. 24, 1941.

I. Newton Brozan and Aaron Holman, both of New York City, for petitioner.

Samuel O. Clark, Jr., Asst. Atty. Gen., and J. Louis Monarch and S. Dee Hanson, Sp. Assts. to Atty. Gen., for respondent.

Before SWAN, CHASE, and FRANK, Circuit Judges.

FRANK, Circuit Judge.

Taxpayer, a woman of considerable wealth, was, for some years prior to 1926, a resident of Mt. Vernon, where, at one time, she had built and later sold a garden apartment house. Conceiving the idea of constructing another garden apartment, she purchased a tract of several acres with this in view, but she became dissatisfied with the location and sold it in 1925. Shortly thereafter she advised a real estate agent at Mt. Vernon that she was interested in acquiring another tract of land upon which to build an apartment house. Early in 1926 she purchased a one-acre parcel for $32,000, paying $7,000 in cash and giving back a mortgage for $25,000. The deed contained restrictions, providing that no building could be erected on the premises for any trade, calling, or business whatever, the premises being restricted to dwelling purposes by means of homes for use or value of not less than $15,000, and built not more than one to each 75 feet of frontage, and that no building erected on the land could be used as a tenement house or apartment house. At the time of the

hearing of the present proceeding by the Board, these restrictions had not been removed, although it was believed, we may assume with good reason, that they could be. Immediately following the acquisition of this property, the taxpayer learned, for the first time, that several large apartment house projects were being contemplated in Mt. Vernon, some of them not far distant from the property in question. She then decided that it would be a mistake to proceed with any plans to build an apartment house on that site, since the other projected apartment houses were more than sufficient to satisfy the demand and there would be difficulty in securing tenants at profitable rental rates.

She then erected on the property a 12-room residence costing in excess of $90,000. On the advice of her real estate agent, this residence was constructed with three separate wings, each of which could be made into a separate apartment with its own private entrance and driveway, so that the building could be converted into a 3-family dwelling. She knew at that time that it could not be rented at a profit as a private residence. She lived in it from the time of its completion in 1926 until December 31, 1931. She then vacated it and endeavored to sell or rent it, but without success. In November or December, 1934, she discharged the caretaker whom she had left in charge of the property and turned the keys to the house over to the attorneys for the original mortgagees with the request that she be released from personal liability on the bond and mortgage. In the last week of 1934, those attorneys informed her that she would not be thus released, as the mortgagees wished to foreclose, although they expressed the opinion that there would be no deficiency judgment against the taxpayer as the mortgagees thought that the market value of the property was in excess of the amount of the bond and mortgage. In the taxpayer's income tax return for the calendar year 1934 she claimed, on the basis of the foregoing, a deductible loss from gross income of $89,588.80 and also deductions for depreciation, cost of insurance and legal expenses. The Commissioner disallowed these deductions and the Board, after hearing, sustained the deficiency as determined by the Commissioner. The taxpayer petitioned this court for review.

■ Taxpayer is entitled to a deduction only for a loss incurred in a "transaction entered into for profit," § 23(e)(2) of the Revenue Act of 1934, 26 U.S.C.A. Int.Rev.Code, § 23(e)(2). The evidence amply supports the finding of the Board that there was a "definite abandonment" by the taxpayer of her original profit motive in purchasing the land and a "definite devotion of the property to a personal residence use." The fact that the residence cost $90,000, coupled with the other facts found by the Board, answers the suggestion that the construction of the residence with three separate wings, so that it could, at some indefinite future date, be converted into three separate apartments, showed a retention of the original business purpose. That the taxpayer had in mind the possibility of later devoting the property to such a purpose is not sufficient to demonstrate that the profit motive remained dominant. Cases can be imagined where a taxpayer's motive might be mixed, with the profit motive so markedly preponderant that it should be regarded as if it were controlling. But that is not this case. Here the prospect of a future business use of the property was clearly subsidiary, only on the edge of the taxpayer's mind. Her attitude was not unlike that of the White Knight who carried a mouse-trap on his horse because, he said, "it's well to be provided for everything." At best, it was as if she had bought a residence for her personal use, intending to live in it for several years and then put it on the market.

■ Once the conclusion is reached that when the residence was built she did not have a business purpose, the case falls into a familiar category. There was no subsequent conversion of the property to a business use; the mere effort to rent it did not have that effect. Morgan v. Commissioner, 5 Cir., 76 F.2d 390. The claimed deductions, therefore, constituted items of personal loss and expense which are not deductible.

The judgment of the Board of Tax Appeals is affirmed.