**UNITED STATES of America,**
**Appellant,**

v.

**Zelma T. KYLE and Betty K. Kyle,**
**Appellees.**

**No. 7330.**

United States Court of Appeals
Fourth Circuit.

Argued Jan. 16, 1957.

Decided April 2, 1957.

Melvin L. Lebow, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and Harry Baum, Attys., Dept. of Justice, Washington, D. C., Lester S. Parsons, Jr., U. S. Atty., Norfolk, Va., and Richard R. Ryder, Asst. U. S. Atty., Richmond, Va., on the brief), for Appellant, and Howard C. Vick, Richmond, Va., for Appellees.

Before SOPER and SOBELOFF, Circuit Judges, and WILLIAMS, District Judge.

WILLIAMS, District Judge.

The question here is whether an uncollectible judgment obtained in a suit on an executory contract to sell a personal residence is deductible as a nonbusiness bad debt or is a nondeductible capital loss from the sale of taxpayers' residence.

In September 1946 Zelma T. and Betty K. Kyle, hereinafter referred to as the taxpayers, purchased a residence, located at No. 1602 Cedar Lane, Richmond, Virginia. On December 2, 1946, plaintiffs entered into a contract for the sale of the residence for $17,750, the agreement requiring a down payment of $700, and the balance to be paid on or before December 30, 1946, at which time the title was to pass. The purchaser took possession of the residence on December 15, 1946, but failed to pay the balance of the purchase price by December 30, 1946. Litigation ensued during which, by stipulation of the parties, the residence was sold for $13,500 on June 27, 1947. The purchaser remained in possession until June 19, 1947. On September 17, 1948, judgment for $4,415 was rendered by the State Circuit Court in favor of taxpayers.

This amount represented the difference between the original contract price of $17,750 and $13,500, the price for which the property was finally sold, plus interest and less the $700 previously paid.

The judgment was never satisfied although all reasonable effort was made by plaintiffs to collect thereon. The uncollectibility of the judgment was determined in 1949.

The plaintiffs claimed a deduction for a nonbusiness bad debt loss for the years 1949-1952. Thereafter the commissioner assessed a deficiency for the years in question, the plaintiffs paid the deficiency under protest, and subsequently, this suit for a refund was instituted.

During the argument of the case, it was agreed that the portion of the judgment which was for interest and the difference between the cost of the property and the original contract price was not deductible. The amount in controversy is, therefore, agreed to be $2,300.

The district court held that the amount of the judgment was a deductible nonbusiness bad debt as claimed by the plaintiffs, and ordered a refund. In so holding, we think the court erred.

In support of its decision, the court below cited Thompson v. Commissioner, 10 B.T.A. 1125; Stewart v. Commissioner, 39 B.T.A. 87; Wenger v. Commissioner, 42 B.T.A. 225; and Bohn v. Commissioner, 43 B.T.A. 953. However, in none of these cases was a residence involved which gave rise to the obligation out of which the nonbusiness bad debt resulted. Moreover, the losses which were allowed as bad debts did not exceed the adjusted cost bases of the properties involved.

The loss sustained by the taxpayers was undoubtedly incurred in the sale of a residence which is not deductible under Treasury Regulations 111, Section 29.23 (e)-1(e). This regulation provides as follows:

"A loss on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him

up to the time of the sale is not deductible. *If however, property so purchased or constructed is prior to its sale rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale,* a loss from the sale of the property, computed as provided in section 111, is, subject to the limitations provided in section 117, an allowable deduction in an amount not to exceed the excess of the value of the property at the time it was appropriated to income-producing purposes (with proper adjustment for depreciation) over the amount realized from the sale." (Emphasis supplied.)

The purchaser undoubtedly acquired an equitable interest in the property by reason of the contract of sale, but this contract of sale was not consummated and it was not contemplated that the full title to the property should be passed until the property had been paid for. The subsequent transactions which followed the refusal of the purchaser to complete the sale and the subsequent sale of the property to a third party by the consent of the original parties to the contract of sale should be considered as all parts of a single transaction by which the original owner parted with his residential property and sustained a loss.

The effect of the statute and the regulations relating to the sale of a residence cannot be avoided by splitting up a transaction into distinct parts and contending that the final step by which the property was conveyed to the third person was not a sale of the residence because at that time the property was not occupied by the taxpayers. To take this position would be evading the purpose and spirit of the Act. There was not a conversion of the property from a residence into an investment such as renting the property or otherwise appropriating it to income-producing property. It is admitted that neither of these things was done. We cannot escape the conclusion that there was a long, drawn out sale by reason of the failure of the original purchaser to comply with the original contract of sale.

In construing the regulations pertaining to the sale of residences, the courts have without exception held that a taxpayer cannot deduct any loss sustained by him as the result of such sale. The courts held in cases hereinafter cited that the fact that the taxpayer was not living in the house when it was sold is not controlling. All of the cases held that to claim the deduction section 29.23(e)– 1(e), supra, must be strictly complied with. No case which we have been able to find held otherwise.

In Phipps v. Helvering, 75 U.S.App. D.C. 86, 124 F.2d 292, the taxpayer had been engaged in buying, improving, renting, and selling real estate since 1904. His holdings were in his own name or in a closely held corporation of which he was the principal stockholder. Two years prior to his entering the above described business, he purchased a house and several lots in Denver, Colorado, and immediately began to use the house as a personal residence. In 1918 he was elected to the United States Senate, left his home in Denver, and took up residence in January 1919 in Washington, D. C. His home in Denver, however, remained habitable. In 1925 he was reelected to the Senate. At this time the neighborhood in which his old residence was located was becoming a business section. Taxpayer then purchased another residence in Denver in his wife's name and moved the remainder of his furniture from his old residence to the new. A caretaker was left in charge of the old residence. Thereafter, the property was listed with real estate agents with instructions to sell. Several propositions were made, nothing materialized, and finally in 1932, the residence was demolished to eliminate maintenance costs, particularly taxes. The taxpayer did not take any depreciation on the residence at any time. The taxpayer claimed a deduction for a loss incurred in his trade or business or incurred in a transaction entered into for profit. *An Internal Rev-*

*enue Regulation almost identical to Section 29.23(e)–1(e), supra, was in effect at that time and was considered by the court.* The court held that the taxpayer was not entitled to a deduction under either contention. The following cases sustain this position: Jones v. C. I. R., 9 Cir., 152 F.2d 392; Gevirtz v. C. I. R., 2 Cir., 123 F.2d 707; Rumsey v. C. I. R., 2 Cir., 82 F.2d 158.

For the foregoing reasons it is clear that the loss that the taxpayers sustained was from the sale of the taxpayers' residence and is therefore not deductible.

The judgment of the district court is reversed.

Reversed.