Patrick **GUFFEY** and **Betty Guffey,**
Plaintiffs,

v.

**UNITED STATES of America,**
**Defendant.**

Civ. No. 62-61.

United States District Court
D. Oregon.

Sept. 14, 1963.

Barbara Ashley Phillips, Medford, Or., for plaintiffs.

Sidney I. Lezak, Acting U. S. Atty., and Donal D. Sullivan, Asst. U. S. Atty., Portland, Or., Louis F. Oberdorfer, Asst. Atty. Gen., and Edward S. Smith and Joyle C. Dahl, Dept. of Justice, Washington, D. C., for the United States.

SOLOMON, Chief Judge.

Plaintiffs, taxpayers, filed an action to recover income taxes alleged to have been overpaid for the years 1954 through 1958 because the District Director of Internal Revenue had denied them a deduction for the loss sustained when a contract for deferred payments received upon the sale of their residence became worthless.

On July 7, 1948, plaintiffs purchased a house in Portland, Oregon, which they occupied as their residence until September 1, 1951. On August 15, 1951, plaintiffs entered into a contract for the sale of this house. Plaintiffs received $700 in cash and the purchaser's contractual obligation to pay the $6,800 balance with interest at 6 per cent in monthly installments of $50. The contract provided that the plaintiffs were to retain title to the property until the purchase price had been paid in full. The purchasers took possession on September 1, 1951, and made the monthly payments until October, 1952, when they discovered that dry rot had seriously weakened the foundation of the house. They abandoned the property, refused to make further payments, and filed a suit in equity in the State court to rescind the contract because of an alleged misrepresentation and concealment of the condition. The Guffeys counterclaimed for the amount due on the contract. A settlement was reached under which the suit was dismissed, and the Guffeys obtained a quitclaim deed to the property and retained the amounts previously paid under the contract.

On January 28, 1954, plaintiffs resold the property to a third party for $2030. Plaintiffs claimed a $1000 deduction from ordinary income for the years 1954 through 1958 for the loss sustained on the ground that the loss was either a non-business bad debt or a loss sustained in a transaction entered into for profit. The District Director audited plaintiffs' returns, determined the loss to be non-deductible, and assessed deficiencies against plaintiffs for the years 1954 through 1958. Plaintiffs paid the deficiencies and later filed claims for refund for each of these years. The claims were timely filed for all five years on the bad debt theory of deductibility but were timely filed for only 1957 and 1958 on the capital loss theory.

Plaintiffs employed the cash receipts and disbursements method in reporting taxable income.

■ Plaintiffs concede that a loss sustained upon the disposition of residential property is not deductible. Federal Income Tax Regulations (1954 Code) Section 1.165–9(a). However, they contend that the loss sustained upon the resale of their reacquired residential property at a price substantially less than the balance due on the contract was not a loss sustained upon the disposition of a residence but rather was a loss resulting from the worthlessness of the original purchasers' contractual obligation and deductible as a non-business bad debt loss under Section 166(d) (1) (B) or as a loss sustained in a transaction entered into for profit under Section 165(c) (2). Neither of these sections is applicable unless the original sale was a taxable event in which the receipt of the obligation was a realization of income. The subsequent worthlessness of the obligation would then be a separate taxable event and not merely a failure to realize the anticipated income from the original sale of the residence.

■■ Upon the disposition of property, a taxpayer who reports income by the cash receipts and disbursements method realizes income only to the ex-

tent of any money received plus the fair market value of any property (other than money) which he likewise receives. Int. Rev.Code of 1954, Section 1001(b). Within the meaning of the income tax laws, a non-negotiable contract for the purchase of property in installments, particularly when title is to pass only upon payment of the full purchase price, is not property received in exchange for the property disposed of. Bedell v. Commissioner, 2 Cir., 1929, 30 F.2d 622. Such a contract is merely evidence of the purchasers' obligation and is not property having a fair market value. Nor is the purchasers' contractual obligation an equivalent of cash. The contract had many of the elements of a mortgage and was assignable, but it was neither embodied in a note nor was it "freely and easily negotiable so that it readily passes from hand to hand in commerce", as in Nina J. Ennis, 17 T.C. 465, 470 (1951); Commissioner v. Garber, 9 Cir., 1931, 50 F.2d 588. It is true, as plaintiffs argue, that contracts for the purchase of land are sometimes used instead of negotiable notes secured by mortgages, but such contracts are not freely traded and are ordinarily sold only at substantial discounts. It was not therefore the equivalent of cash, and income was not realized upon its receipt.

While under the peculiar circumstances of this case, the plaintiffs have been disadvantaged by the application of this rule, in the overwhelming majority of the cases, the sellers of real property on installment contracts are greatly benefited by a rule which permits them to pay taxes on gains only after they have actually received such gains usually in cash but on some occasions the equivalent of cash. I am reluctant to upset a rule which is so well established and which enures to the benefit of so many taxpayers.

■ Since plaintiffs did not realize income upon receipt of the contract, the transaction was not then a completed taxable event. Where a taxpayer disposes of property at a loss, the transaction is not a completed taxable event

until all income from the exchange has been realized, Int.Rev.Code of 1954, Section 1001(a); here plaintiffs did not realize all of the income until the resale of the residence in January, 1954. The original sale of the residence, its re-acquisition after the litigation, and its resale to third parties must be considered as one continuous transaction for tax purposes. See United States v. Kyle, 4 Cir., 1957, 242 F.2d 825.

This was a single taxable event in which the plaintiffs sustained a nondeductible loss upon the sale of their residence. The worthlessness of the contract was not a separate taxable event to which Section 166(d) (1) (B) or Section 165 (c) (2) would be applicable.

The government counsel shall present findings of fact, conclusions of law and a judgment all in accordance with this opinion.