Patrick GUFFEY and Betty Guffey,
Appellants,

v.

UNITED STATES of America,
Appellee.

No. 19313.

United States Court of Appeals
Ninth Circuit.

Dec. 29, 1964.

Barbara Ashley Phillips, Medford, Or., Ashley Greene, Oregon City, Or., for appellants.

Louis F. Oberdorfer, Asst. Atty. Gen., Meyer Rothwacks, I. Henry Kutz, Carolyn R. Just, Loring Post, Dept. of Justice, Washington, D. C., Sidney I. Lezak, U. S. Atty., Donal D. Sullivan, Asst. U. S. Atty., Portland, Or., for appellee.

Before CHAMBERS, BROWNING and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

Plaintiff taxpayers appeal from a judgment against them in their action to recover income taxes claimed to have been unlawfully collected, following denial of their claims for refunds. We affirm.

The matter was tried under a pre-trial order containing an agreed statement of facts which shows the following: The years in question are 1954 through 1958, in each of which the taxpayers claimed a deduction of $1,000 by reason of a claimed bad debt ascertained to be worthless, or a capital loss occurring, in 1954. The plaintiffs' residence had a total cost basis of $8200. On August 10, 1951, they agreed with parties named Bueneman to sell them the residence for $7500. This was evidenced by an earnest money agreement under which the Buenemans were to pay $300 upon its execution, $400 upon the execution of a contract of purchase and a balance of $6800 upon terms to be defined in the contract. On August 15, 1951 a contract was executed, providing that the balance was to be paid in monthly installments of $50, including interest at 6% per annum, beginning September 10, 1951. Possession was delivered to the Buenemans on September 1, 1951. The remaining obligations of the taxpayers were to provide title insurance after $2,000 of the purchase price had been paid and to convey title to the property when the full contract price had been paid.

Monthly payments were made by the Buenemans until October, 1952. In that month they filed a complaint in the Oregon courts seeking rescission of the contract on the ground that the house was undermined by dry rot, a condition which was alleged to have been known to the taxpayers and misrepresented and concealed by them. The taxpayers counterclaimed for the purchase price. In January, 1954, while the case was on trial, it was settled by the Buenemans giving a quit-claim deed to the property to the taxpayers and the taxpayers retaining the amounts that had been previously paid to them under the contract. On January 28, 1954 the taxpayers resold the property to parties named Welch for a price of $2030, which was then the fair market value of the property, realizing a net amount of $1942.23. The taxpayers claimed a loss, arising in 1954, in the sum of $6025.31. (The United States does not agree that this is the correct amount assuming that there was a deductible loss.) $1,000 of this claimed loss was taken by the taxpayers in 1954, and $1,000 in each of the succeeding four years. The Commissioner assessed a deficiency for each year and the total amount of tax involved, including interest, is $1012.00.

The taxpayers' claims for refund are based upon two theories—(1) that they were entitled to a bad debt deduction, ascertained in 1954, as evidenced by the refusal of the Buenemans to complete their payments under the contract, and the settlement that was finally made, and (2) that they were entitled to claim a capital loss. However, while the claim that there was a bad debt is available for all five years, the capital loss theory was only asserted in the claims for refund relating to 1957 and 1958, the amount of tax involved for those years being $418.00.

The court made findings of fact which follow the agreed facts, although in less detail. It also found that contracts for the purchase of land are sometimes used instead of negotiable notes secured by mortgages, but such contracts are not freely traded and are ordinarily sold only at substantial discounts, and that a contract for the sale of land is not property having a fair market value. On the basis of these findings, it concluded that the sale to the Buenemans was not a taxable event and that consequently the taxpayers could not claim either a bad debt deduction or a capital loss deduction, the taxpayers being on a cash receipts and disbursements basis of accounting. The opinion of the trial court is reported at 222 F.Supp. 461.

■ Both parties are in agreement that the taxpayers did not sustain a deductible loss when they sold their home in 1951. (I.R.C. 1954 § 165(c)) At oral argument, counsel for the government conceded that a contract for sale of land such as the one here involved can have a fair market value. Evidence as to fair market value was not offered until after the trial court had reached its decision. This apparently was by reason of an agreement of counsel who believed that the case could be disposed of on a question of law. When the court took the position that it did, the taxpayers' counsel then moved for a new trial, seeking leave to produce evidence as to the fair market value of the contract with the Buenemans. This motion was denied. The government's concession at oral argument (cf. Phillips v. Frank, 9 Cir., 1961, 295 F.2d 629, 633) indicates that this was error. However, we are of the opinion that under the agreed statement of facts the taxpayers cannot recover in any event.

■ The taxpayers offered no evidence as to whether, at the time the contract with the Buenemans was made, the house was in fact undermined by dry rot. The agreed facts seem to us to lead inevitably to the conclusion, in the absence of other evidence, that the settlement made in 1954 was a mutual agreement to rescind the contract of sale, the taxpayers getting the residence back and retaining the moneys received as compensation for the use of the house while it was in the Buenemans' possession. The contract of sale had not at that time been

effectively completed. The taxpayers, having gotten back the residence which they had originally sold, immediately resold it for the best price they could get. We are in agreement with the government's view that, in reality, the three transactions here involved, the first contract of sale, the rescission arising out of the litigation brought by the buyers, and the re-sale, are one transaction whereby the taxpayers sold their home. Such a sale, if it results in a loss, does not result in a deductible loss. United States v. Kyle, 4 Cir., 1957, 242 F.2d 825. It can fairly be said that the settlement with the Buenemans was, in substance, a reduction in the purchase price. (See Wener v. C. I. R., 9 Cir., 1957, 242 F.2d 938)

What the taxpayers got when they made their contract with the Buenemans was a promise which turned out to be unenforceable by reason of claimed failure of the consideration the taxpayers gave. Its uncollectibility did not arise out of the inability of the promisors to pay, as is the case with the usual bad debt deduction. No evidence was offered as to the Buenemans' solvency. For all that appears, the maximum amount of debt that was valid and enforceable was no more than what the taxpayers recovered. The mere fact that the creditor suffers a loss does not establish that it is a bad debt loss. The taxpayers had the burden of proving that the Commissioner's determination that they did not sustain a bad debt loss was erroneous. (Uhl Estate Co. v. C. I. R., 9 Cir., 1940, 116 F.2d 403; Long v. C. I. R., 9 Cir., 1938, 96 F.2d 270.) They did not meet that burden. The only consideration that they gave for the debt was the home. This they got back. They say that the "basis" for the debt was their cost "basis" for the home. When they got the home back they still had that "basis." But the property was still the home, and when they resold it, they were still selling the home. (United States v. Kyle, supra) In Kyle, it was held that there was no bad debt loss under quite comparable circumstances, even though in that case the original buyers were shown to be insolvent.

On the other hand, there can be no deductible capital loss here because the transaction was not entered into for profit within the meaning of section 165(c) (2). The taxpayers contend that the contract of sale was itself a transaction entered into for profit and itself constituted an appropriation of the property to income-producing purposes. The regulations and the authorities both make it clear that the appropriation for such purposes must occur before the property is sold, the sale itself not being such an appropriation, whether it be for cash or on credit. Treasury Regulations on Income Tax (1954 Code) § 1.165–9 (26 C.F.R. § 1.165–9); Jones v. C. I. R., 9 Cir., 1945, 152 F.2d 392; Gevirtz v. C. I. R., 2 Cir., 1941, 123 F.2d 707; Seletos v. C. I. R., 8 Cir., 1958, 254 F.2d 794; Rumsey v. C. I. R., 2 Cir., 1936, 82 F.2d 158; Morgan v. C. I. R., 5 Cir., 1935, 76 F.2d 390.

Affirmed.