DONALD G. CORLEY, MARY E. CORLEY, BARRY J. GLICK, DEBORAH A. GLICK, ALVIN L. GLICK, BARBARA M. GLICK, CARLTON L. GLICK, DENISE L. GLICK AND RANDAL L. GLICK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Corley v. Commissioner
Docket No. 4108-83.
United States Tax Court
T.C. Memo 1986-17; 1986 Tax Ct. Memo LEXIS 596; 51 T.C.M. (CCH) 280; T.C.M. (RIA) 86017; January 13, 1986. *596 Held: A Michigan land contract executed by the limited partnership in which petitioners were partners had an ascertainable for market value. Therefore, under the installment sale provisions, gain on the sale must be reported as payments are received. Michael D. Gingras, for the petitioners. Jacqueline M. Hotz, for the respondent. WHITAKER
MEMORANDUM OPINION WHITAKER, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes for the years 1978 through 1980: Petitioner(s)
1978
1979
1980
Donald G. and
Mary E. Corley
$3,385.00
$2,350.00
Barry J. and
Deborah A. Glick
2,256.00
513.00
$827.00
Alvin L. and
Barbara M. Glick
4,535.00
100.00
Carlton L. and
Denise L. Glick
3,187.00
549.00
505.00
Randal L. Glick
115.00
*597 After concessions by the parties, the issue for our decision is whether a land contract, without an accompanying negotiable instrument, had an ascertainable value for purposes of reporting gain from an installment sale pursuant to section 453. [1]
The parties have submitted this case with the facts fully stipulated. The stipulation of facts and accompanying joint exhibits are incorporated herein by this reference. Petitioners were residents of Jackson, Michigan when the petition herein was filed. On October 16, 1974, Argyle Acres, Ltd. (Argyle), a Michigan limited partnership, was formed consisting of one general partner, petitioner Barry J. Glick, and four limited partners, Hirschie Schaffner and petitioners Donald G. Corley, Alvin L. Glick, and Carlton L. Glick. Under the terms of the partnership agreement, the general partner and each of the limited partners shared the gain or assumed the loss of the partnership equally. Argyle used the cash method of accounting when reporting *598 rental income and expenses. Argyle purchased a shopping center in Jackson, Michigan. A mortgage was secured from IDS Mortgage Corporation, which was subsequently assigned to Northwestern National Life Insurance Company (Northwestern). On November 10, 1978, Argyle sold the shopping center for $1,239,000. Of this amount, $10,000 was paid as earnest money and $185,000 was paid upon execution of the land contract. An escrow agreement was simultaneously executed to provide for payment of the $1,044,000 balance. This balance consisted of $710,793.49 due on the Northwestern mortgage and $333,206.51 due Argyle. The taxable gain on the sale was $419,504. Pursuant to the land contract and escrow agreement, the purchasers were required to make payments into escrow of $10,000 per month for the first 10 years. The amount of $7,493.75 from these monthly payments was applied to the principal and interest accruing on the outstanding mortgage held by Northwestern. [2] The balance, $2,506.25, was paid directly to the five partners of Argyle in equal 20 percent shares. At the end of 10 years, the purchasers were required to make a balloon payment to Argyle equal to the balance due the partnership *599 ($333,206.51 plus interest accruing thereon at 9-3/4 percent) less the portion of the monthly payments paid to the partners over the prior 10 years. Since Argyle's share of the purchasers' monthly payments was less than the amount of interest accruing, the balance due would exceed the initial $333,206.51 owed. After the balloon payment, the purchasers' monthly payments were reduced to the $7,493.75 paid to Northwestern. Upon default by the purchasers, Argyle was entitled to: (1) declare the land contract forfeited and void; (2) retain all amounts paid under the land contract and all improvements, additions, and accretions to the shopping center; and (3) obtain a deficiency judgment against petitioners not to exceed $150,000. Argyle reserved the right to convey its interest during the period of the land contract and to encumber the property by mortgages not to exceed the $333,206.51 balance owed the partnership. *600 After the balloon payment, Argyle's right to encumber the property ceased. Under the land contract, the purchasers were required to make $50,000 of improvements within the first 12 months. They were also required to pay all taxes and assessments and to maintain insurance on the building. The purchasers took possession of the shopping center subject to the existing tenants' rights and Argyle assigned these tenants' contracts to the purchasers. The escrow agreement further provided that an executed warranty deed would be held by the escrow agent until all terms of the land contract were fulfilled. Under an agreement dated March 1, 1979, petitioner Alvin L. Glick transferred his entire interest in Argyle to a trust established for the benefit of his son, petitioner Randal L. Glick. During the years in issue, Argyle received the following payments: [3]
1978
1979
1980
$219,072.00
$16,190.00
$17,974.00
None of the petitioners reported any gain from the sale of the shopping center on their Federal income tax returns during the *601 years in issue. The deficiency notices issued by respondent challenge this omission on the basis that gain from the sale of the shopping center should be reported under the normal installment method provided in section 1.453-5(a) [4], Income Tax Regs.
Petitioners' contend that gain from the sale should be reported under the cost recovery method pursuant to section 1.453-6(a)(2), Income Tax Regs.
The parties agree that Argyle's sale of the shopping center qualifies for reporting under the installment method pursuant to section 453. [5] *602 Subsections 453(a) and (b) and section 1.453-5(a), Income Tax Regs., provide the general rule that, on a qualifying installment sale of real property, gain reported for any taxable year is the proportion of the installment payments received in that year which the gross profit, realized or to be realized when payment is completed, bears to the total contract price. Section 1.453-6(a)(2), Income Tax Regs., provides an exception to this general rule in that. [i]f the obligations received by the vendor have no fair market value, the payments in cash or other property having a fair market value shall be applied against and reduce the basis of the property sold, and if in excess of such basis shall be taxable to the extent of the excess. * * * *603 Determinative of petitioners' right to report gain under this exception, and the crux of the parties' disagreement, is whether the land contract has an ascertainable fair market value. If it does, respondent is correct that gain must be reported under the normal installment method, i.e., proportionally as payments are received. Petitioners bear the burden of proving that respondent's deficiency determination is incorrect. Rule 142(a). In carrying this burden, petitioners must address, and overcome, the directive of section 1.453-6(a)(2), Income Tax Regs., which provides that "[o]nly in rare and extraordinary cases does property have no fair market value." Numerous cases cited by respondent support the proposition that, in Michigan, land contracts are accepted as evidence of indebtedness, are freely traded, assignable and pledged and that purchase of such contracts at discount is a common practice in the State. Darby Investment Corp. v. Commissioner,37 T.C. 839 (1962), *604 affd. 315 F.2d 551 (6th Cir. 1963); Wood v. Commissioner,25 T.C. 468 (1955). See also Heller Trust v. Commissioner,382 F.2d 675 (9th Cir. 1967), affg. in part and revg. in part two Memorandum Opinions of this Court; Perelman v. Commissioner,41 T.C. 234 (1963). More to the point, absent unique circumstances, which do not appear to be present in this case, such land contracts have ascertainable fair market values, albeit perhaps not equal to their face value. Petitioners contend that the land contract in issue "was without negotiable instrument and, thus, had no fair market value." Therefore, according to petitioners, the transaction remains open and gain need be reported only after their basis has been recovered. However, the authority cited by petitioners does not support the blanket proposition that an accompanying negotiable instrument is a prerequisite to the marketability of a land contract. Guffey v. United States,222 F. Supp 461 (D. Or. 1963), affd. 339 F.2d 759 (9th Cir. 1964). [6] Nor is there any evidence to indicate that the instant case is "rare and extraordinary" *605 in that the land contract in issue does not have an ascertainable fair market value. In arguing that the land contract does not have an ascertainable fair market value, petitioners contend that Northwestern would have to consent to a sale of the contract and that, possibly, petitioners would remain liable on the outstanding mortgage if they sold the land contract. Nothing in the record supports this speculation. Even if correct, while these limitations may result in a lower fair market value they would not make such value unascertainable. Petitioners also argue that, since the monthly payments are less than the accruing interest, the $150,000 limitation of the purchasers' liability on default decreases in proportion to value and the likelihood of finding a purchaser for the land contract decreases *606 with the passage of time. This argument ignores the fact that the balance of the Northwestern mortgage declines over time, the purchasers are required to complete $50,000 of improvements within 12 months and, on default, the land contract holder may obtain damages of up to $150,000 as well as possession of the property. [7] Even if we assume the limited liability on default would impact negatively on fair market value, this fact alone does not compel the conclusion that the land contract has no ascertainable fair market value. We find that the land contract in issue has an ascertainable fair market value and that gain must be reported as payments are received. Decision will be entered under Rule 155.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue, and all rule references are to the Tax Court Rules of Practice and Procedure.↩
2. The purchasers agreed to all of the terms and conditions of the existing mortgage and Argyle agreed to use its best efforts to provide, at closing, Northwestern's written consent to the sale. The record is silent as to whether this written consent was provided.↩
3. Although the stipulation is not explicit, these "payments" include only that portion of payments representing principal.↩
4. Under this method, respondent asserts that the gross profit percentage to use in determining the amount of income to be reported is 33.9 percent. Petitioners have not contested this percentage and are deemed to have conceded it if the normal installment method of reporting is found appropriate. Implicit in this concession is the fact that the land contract, if its value is ascertainable, was worth the unpaid balance on the date of the transaction, although an argument might be made that it was worth less than the unpaid balance.↩
5. As applicable during the years before the Court, section 453(b)(2) provided that gain could be reported under the installment method "if in the taxable year of the sale or other disposition-- (A) there are no payments, or (B) the payments (exclusive of evidences of indebtedness of the purchaser) do not exceed 30 percent of the selling price."↩
6. In fact, the appellate court opinion indicates that, after the district court decision, taxpayer's counsel moved for a new trial seeking leave to produce evidence as to fair market value of the contract in issue and counsel for the government conceded that such a contract can have a fair market value. Guffey v. United States,339 F.2d 759, 760↩ (9th Cir. 1964).
7. If repossession occurs, the value of the land may well exceed the outstanding balance due on the land contract given the $10,000 earnest money payment and $185,000 paid at the execution of the land contract. Additionally, the property may have appreciated in value.↩