T.C. Summary Opinion 2002-60

UNITED STATES TAX COURT

BILL L. AND NANCY L. TURNER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18298-99S.              Filed May 28, 2002.

Bill L. Turner, pro se.

<u>Stephen P. Baker</u>, for respondent.

VASQUEZ, <u>Judge</u>:  This case was heard pursuant to the
provisions of section 7463[1] in effect at the time petitioners
filed the petition.  The decision to be entered is not reviewable
by any other court, and this opinion should not be cited as
authority.

_____

[1] Unless otherwise indicated, all subsequent section
references are to the Internal Revenue Code in effect for the
year in issue, and all Rule references are to the Tax Court Rules
of Practice and Procedure.

Respondent determined a deficiency of $11,032, an addition to tax pursuant to section 6651(a)(1) of $2,757, and a penalty pursuant to section 6662(a) of $2,206 with respect to petitioners' 1994 Federal income tax. After a concession by petitioners,[2] the issues for decision are: (1) Whether petitioners are entitled to deduct a loss pursuant to section 165 on the sale of their former residence in 1994; and (2) whether petitioners are liable for the accuracy-related penalty for 1994.

Some of the facts have been stipulated and are so found. The stipulation of facts, the supplemental stipulation of facts, and the attached exhibits are incorporated herein by this reference. At the time they filed the petition, petitioners resided in Wasilla, Alaska.

Background

In 1983, petitioners purchased a house located at 2041 Belair Drive in Anchorage, Alaska (the Belair property), for $295,000. From August 1983 to May 1994, petitioners' principal residence was the Belair property.

In December 1993, petitioners purchased approximately 151 acres of land in Wasilla, Alaska (the Wasilla property).

On February 24, 1994, petitioners listed the Belair property for sale with Fortune Properties (Fortune). Petitioners' real

---

[2] In their reply brief, petitioners concede that they are liable for the addition to tax pursuant to sec. 6651(a)(1).

estate agent from Fortune suggested that the Belair property would have a better chance of selling, and would sell for a higher price, if petitioners renovated and upgraded the Belair property. The suggested repairs and upgrades included replacing the carpeting and painting the house. Petitioners, however, decided to list the Belair property for sale "as is" for $288,000 and forgo renovating the Belair property.

The listing agreement gave Fortune the exclusive right to sell the Belair property and ran until July 1, 1994.[3] Petitioners' plan was to sell the Belair property as a personal residence so that they could live elsewhere.

In May 1994, petitioners moved out of the Belair property and into a house located on the Wasilla property. The listing with Fortune expired without a sale. Petitioners did not relist the Belair property when the listing expired because they planned to renovate and upgrade the Belair property in order to make it more marketable.

From June through August 1994, petitioners upgraded and refurbished the Belair house in order to make it easier to sell. Petitioners replaced carpets throughout the house, added tile floor to the entryway, installed new kitchen counter tops, removed wallpaper throughout the house, installed new vinyl

---

[3] Fortune did not handle rental listings.

flooring, repaired drywall, and painted the interior and exterior of the house.

Around October 1994, petitioners decided to sell the Belair property regardless of market conditions. Petitioners listed the Belair property with Jack White Realty for $275,000. Within 1 week, petitioners received a full-price offer. On December 5, 1994, the sale closed. The settlement sheet for the sale of the Belair property reflected that the purchasers paid an extra $499.98 for 1-week's early occupancy.

Petitioners never placed a sign in front of the Belair property nor ran any newspaper advertisements listing it for rent. Furthermore, the renovation of the Belair property prevented it from being rented. By the time petitioners could have rented the Belair property, petitioners had decided "to get rid of" the Belair property. Petitioners never rented the Belair property, and it remained unoccupied until the new owners moved in on or about November 29, 1994.

In December 1994, petitioners met with their tax accountant, Fred M. Strand, to discuss their tax liability for 1994.[4] Mr. Strand and petitioners discussed the sale of the Belair property, and Mr. Strand's opinion was that they had converted the property

---

[4] For more than 10 years, petitioners met with their tax accountant at the end of the year to help prepare their taxes for that year.

to business property and the loss on the sale was a business loss.

Mr. Strand prepared petitioner's 1994 return. Petitioners relied on Mr. Strand's tax advice in the preparation of their 1994 return. Petitioners reported the $499.98 they received on the sale of the Belair property, for 1-week's early occupancy, on Schedule E, Supplemental Income and Loss, of their 1994 return as rental income from the Belair property. Petitioners also reported a $35,428 loss on the sale of the Belair property on Form 4797, Sales of Business Property, which they attached to their 1994 return. Petitioners filed their 1994 joint Federal income tax return on December 8, 1997.

Discussion

I.  Loss on Sale of the Belair Property

Deductions are a matter of legislative grace, and petitioners have the burden of showing that they are entitled to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).[5]

Section 165(c) limits the deduction for losses pursuant to section 165(a) by individuals to:

(1) losses incurred in a trade or business;

---

[5]  Cf. sec. 7491(a), effective for court proceedings arising in connection with examinations commencing after July 22, 1998. Petitioners do not contend that their examination began after July 22, 1998, or that sec. 7491(a) is applicable to their case.

(2) losses incurred in any transaction entered into for profit, though not connected with a trade or business; and

(3) * * * losses of property not connected with a trade or business, * * * if such losses arise from fire, storm, shipwreck, or other casualty, or from theft.

It is a long-settled principle that a loss incurred by a taxpayer on the sale of his or her personal residence is not deductible except where prior to the sale the taxpayer has abandoned the use of the property as his or her personal residence and has converted it to profit inspired use. Melone v. Commissioner, 45 T.C. 501, 505 (1966); Leslie v. Commissioner, 6 T.C. 488 (1946); sec. 1.165-9(a) and (b), Income Tax Regs.

Petitioners concede that the $499.98 listed on their settlement sheet was additional income paid to them by the purchasers incident to the sale of the Belair property and not rent.[6] Petitioners argue, however, that they "otherwise appropriated" the Belair property "to income-producing purposes". See sec. 1.165-9(b)(1), Income Tax Regs.

For a conversion of use to have occurred, petitioners' use of the Belair property would have to have shifted from a personal use to a business or profit-oriented purpose permitted under section 165(c). Henry v. Commissioner, T.C. Memo. 1983-277. In

---

[6] We note that rent paid as an interim measure until the sale of a personal residence is completed is insufficient to convert a personal residence to income-producing property. Dawson v. Commissioner, T.C. Memo. 1972-4.

<u>Newcombe v. Commissioner</u>, 54 T.C. 1298, 1300-1301 (1970), the Court set forth a number of factors to be considered to determine whether a personal residence had been converted to property held for the production of income. In the case at bar, the relevant factors are: (1) Petitioners actually occupied the Belair property as their personal residence; (2) the Belair property was not occupied from the time petitioners moved out of it until its subsequent sale and therefore was potentially available to petitioners for their personal use throughout this period; and (3) the Belair property was unavailable for rent, due to the renovation, and by the time petitioners could have rented the Belair property they had decided "to get rid of" the Belair property.[7] <u>Id.</u>; <u>Henry v. Commissioner</u>, <u>supra</u>.

Merely offering the property for sale does not necessarily convert it into property held for the production of income. <u>Newcombe v. Commissioner</u>, <u>supra</u> at 1301. Placing property on the market for immediate sale, at or shortly after the time it is abandoned as a residence, will ordinarily be strong evidence that a taxpayer is not holding the property for postconversion appreciation in value. <u>Id.</u> at 1302. Under such circumstances, only a very exceptional situation will permit a finding that the

---

[7] Furthermore, even if petitioners had attempted to rent the Belair property, as they claimed, unsuccessful efforts to rent property have been held to be insufficient to accomplish a conversion. <u>Gevirtz v. Commissioner</u>, 123 F.2d 707 (2d Cir. 1941); <u>Grammer v. Commissioner</u>, 12 T.C. 34, 37 (1949).

taxpayer converted the property to income-producing purposes.
_Id._

We conclude that petitioners have failed to establish that they converted their former residence, the Belair property, to income-producing purposes. Accordingly, the loss on its sale is not deductible under section 165.

II. _Section 6662(a)_

Pursuant to section 6662(a), a taxpayer may be liable for a penalty of 20 percent on the portion of an underpayment of tax (1) attributable to a substantial understatement of tax or (2) due to negligence or disregard of rules or regulations. Sec. 6662(b). Whether applied because of a substantial understatement of tax or negligence or disregard of the rules or regulations, the accuracy-related penalty is not imposed with respect to any portion of the understatement as to which the taxpayer acted with reasonable cause and in good faith. Sec. 6664(c)(1). The decision as to whether the taxpayer acted with reasonable cause and in good faith depends upon all the pertinent facts and circumstances. Sec. 1.6664-4(b)(1), Income Tax Regs.

Reasonable and good faith reliance on the advice of an accountant may offer relief from the imposition of the penalty. _Id._; _United States v. Boyle_, 469 U.S. 241, 250-251 (1985). Petitioners agree with respondent that they reported the $499.98 on the wrong schedule; however, petitioners' accountant was the

one who decided to place the $499.98 on Schedule E.  Furthermore, Mr. Turner testified and a letter dated April 30, 1997, from Mr. Strand confirmed that petitioners deducted the loss on the sale of the Belair property on their 1994 tax return based on Mr. Strand's advice that petitioners had converted the Belair property to business property and the loss on the sale was a business loss.

We think the foregoing circumstances meet the standard established in United States v. Boyle, supra at 251, where the Supreme Court stated:  "When an accountant or attorney advises a taxpayer on a matter of tax law, such as whether a liability exists, it is reasonable for the taxpayer to rely on that advice."  We conclude that petitioners made a reasonable effort to obtain advice with respect to the tax treatment of their sale of the Belair property, and therefore they are not liable for the section 6662(a) penalty.

To reflect the foregoing,

Decision will be entered for respondent as to the deficiency and the addition to tax pursuant to section 6651(a)(1), and for petitioners as to the penalty pursuant to section 6662.