T.C. Memo. 2004-134

UNITED STATES TAX COURT

MICHAEL R. AND HELEN G. JOSEPH, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 10840-02.              Filed June 8, 2004.

<u>Joe Alfred Izen, Jr.</u>, for petitioners.

<u>David Lau</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined deficiencies in
petitioners' Federal income taxes as follows:

| Year | Deficiency |
|------|-----------|
| 1998 | $   801 |
| 1999 | 32,509 |

The issue for decision is whether petitioners are entitled to claimed capital loss carryover deductions relating to a 1995 purported sale of residential property located in Honolulu, Hawaii.

Unless otherwise specified, references to petitioner in the singular are to petitioner Michael R. Joseph, and all section references are to the Internal Revenue Code in effect for the years in issue.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

At the time the petition was filed, petitioners resided in Honolulu, Hawaii.

From 1987 to 1992, petitioner practiced as a chiropractor in California but once a month commuted to Hawaii as a consultant for insurance companies. In 1992, petitioners sold their California residence, and petitioner moved his family and his chiropractic practice to Hawaii.

On December 21, 1992, with proceeds from the sale of their California residence, petitioners purchased a residential lot located at 595 Kahiau Loop, Honolulu, Hawaii (the property), for a purchase price of $662,608.

At the time of purchase, petitioners intended to construct on the property their personal residence. The property has unobstructed views of Diamond Head and the Pacific Ocean, with

views of the sunrise, sunset, city of Honolulu, and the mountains.

Shortly after purchasing the property, petitioners hired an engineer to complete a soil report. Petitioners then hired a prestigious architect in Hawaii to draw up the plans for petitioners' residence on the property. Thereafter, petitioners solicited from contractors bids to prepare the foundation for the residence on the property.

In August of 1994, petitioners hired a contractor to construct petitioners' residence on the property.

By October of 1994, however, petitioners' relationship with the contractor had deteriorated to the point where petitioners terminated the contract with the contractor. The contractor then threatened to sue petitioners and to "steal" the property from them.

Petitioners were advised by a business consultant to transfer the property to a trust that the consultant had established (the Trust) in order to make it more difficult for petitioners' former contractor to carry through with his threat to "steal" the property from petitioners.

On March 7, 1995, petitioners transferred[1] the property to the Trust for a stated sale price of $300,000. Petitioners received the $300,000, the ultimate source of which, however, is not established in the record. Petitioners deposited the $300,000 into their personal bank account.

Prior to transferring the property to the Trust, petitioners did not attempt to list the property for sale with a realtor or otherwise attempt to market or to sell the property.

With the transfer of the property to the Trust, petitioners retained an option to repurchase the property for an unstated amount, which option they recorded. Petitioners purportedly paid the Trust $100 for the option.

Petitioners also transferred to the Trust two building permits that had been issued to petitioners on October 18, 1993, and February 1, 1995, by the city and county of Honolulu, authorizing construction of petitioners' residence on the property. Architectural plans and drawings for the residence, soil reports, and other reports also were transferred to the Trust.

Between March of 1995 and April of 1996, approximately $600,000 was spent on the construction of a residence on the

---

[1] The use in our Findings of Fact of the words "transfer" and "repurchase" (and other forms thereof) is not intended to constitute findings as to the true nature of the transactions between petitioners and the Trust.

property.  The ultimate source of the $600,000 spent on the residence, however, is not established in the record.  The residence was completed sometime in 1996.  Shortly after completion, petitioners moved into the residence.

On April 22, 1996, when the contractor was no longer viewed as a threat, for a stated price of $500,000, petitioners exercised the option to repurchase the property and the completed residence.  Petitioners, however, paid no money to the Trust at the closing of this repurchase, nor in later years through the time of trial.

Prior to transferring the property back to petitioners, the Trust did not attempt to list the property for sale with a realtor or otherwise attempt to market or to sell the property.

From 1996 to the time of trial, petitioners have lived in the residence on the property.

From 1992 to 1996, petitioners employed a certified public accountant to prepare petitioners' Federal income tax returns and to give petitioners tax advice.

On Schedule D, Capital Gains and Losses, attached to their 1995 joint Federal income tax return, petitioners reported a capital loss of $598,059 relating to the purported 1995 sale of the property by petitioners to the Trust, $3,000 of which was applied to offset petitioners' ordinary income and $4,033 of which was applied to offset petitioners' capital gain for 1995,

and $5,854 of which was applied as a carryover loss deduction to offset petitioners' ordinary income and/or capital gain for 1996 and/or for 1997.

On their 1998 and 1999 joint Federal income tax returns, petitioners claimed a capital loss carryover of $585,172 relating to the purported 1995 sale of the property by petitioners to the Trust, $3,000 of which was applied to offset petitioners' ordinary income for each of 1998 and 1999 and $137,544 of which was applied to offset petitioners' capital gain for 1999.

On audit of petitioners for 1998 and 1999, respondent determined that the transfer of the property by petitioners to the Trust constituted a sham transaction and that no actual loss was realized by petitioners. Alternatively, respondent determined that even if petitioners transferred the property to the Trust, the property constituted a personal asset of petitioners with respect to which no capital loss carryover deductions for 1998 and 1999 were allowable.[2]

---

[2] The record herein does not indicate whether respondent disallowed the capital loss deductions claimed by petitioners for 1995, 1996, and 1997 and whether respondent determined a deficiency against petitioners for those years relating to the purported 1995 sale of the property by petitioners to the Trust.

OPINION

We address only respondent's alternative ground for disallowing petitioners' claimed capital loss carryover deductions for 1998 and 1999.[3]

Under section 165(c)(2) an individual taxpayer is allowed a loss deduction where a loss is incurred in a transaction entered into for profit. The purchase of a personal residence generally is not considered a transaction entered into for profit.

The regulations under section 165 provide: "A loss sustained on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of the sale is not deductible under section 165(a)." Sec. 1.165-9(a), Income Tax Regs.

The regulations also provide that in order to be allowed a loss on the sale of property, which at an earlier time was used as a personal residence, a taxpayer must show that the taxpayer's purpose for owning the residence changed and that the new purpose was for the production of income.

> If property purchased or constructed by the taxpayer for use as his personal residence is, prior to its sale, rented or otherwise appropriated to income-producing purposes and is used for such purposes up to the time of its sale, a loss sustained on the sale of the property shall be allowed as a deduction under section 165(a). [Sec. 1.165-9(b)(1), Income Tax Regs.]

---

[3] Petitioners do not assert that the burden of proof in this case should shift to respondent under sec. 7491.

Although inconsistent with previous statements, including their testimony at trial, petitioners now argue that in 1992 they purchased the property with the intent to build a residence thereon not for them to live in but for them to resell for a profit.

Respondent argues that the property at all relevant times constituted a personal asset of petitioners and was not held for resale and, therefore, that the purported sale of the property to the Trust does not give rise to an allowable capital loss and that the claimed capital loss carryover deductions for 1998 and 1999 were properly disallowed.

In Jones v. Commissioner, 152 F.2d 392, 393 (9th Cir. 1945), a capital loss deduction was disallowed relating to the sale of property on which the taxpayers intended to build their personal residence.  The taxpayers in Jones never lived on the property. Instead, they built their residence elsewhere and, after making extensive improvements to the property, they sold it at a loss. See also Guffey v. United States, 339 F.2d 759 (9th Cir. 1964).

Petitioners attempt to distinguish Jones.  Petitioners argue that Jones does not apply to losses claimed under section 165 because Jones was decided prior to enactment of section 165 and the regulations thereunder.  Jones however involved section 23 of the Internal Revenue Code of 1939, the predecessor to section 165, which limited the deductibility of losses of individuals to

the same circumstances outlined in current section 165.  See secs. 23(e), I.R.C. 1939, 165(c).

The regulations promulgated under section 23 of the Internal Revenue Code of 1939 are virtually identical to the current regulations.  They provided:  "A loss on the sale of residential property purchased or constructed by the taxpayer for use as his personal residence and so used by him up to the time of the sale is not deductible."  Sec. 29.23(e)-1, Regs. 111 (1943).

Petitioners argue that because they did not live in the residence on the property before the purported sale to the Trust, the claimed loss should be allowed.  The taxpayers in Jones v. Commissioner, supra, never lived on the property, and the Court of Appeals for the Ninth Circuit ruled that no loss was allowable.

Petitioners also argue that Jones is distinguishable because the taxpayers in Jones did not purchase the property with the intent to sell it at a profit.  As stated, petitioners herein stipulated that they intended to construct on the property "their personal residence", and petitioner testified that petitioners were attracted to the property because they were "looking for a house in Hawaii to live in."  Clearly, petitioners purchased the property with the intent to build thereon their personal residence.

In effect, petitioners are arguing that between the time they purchased the property and the time they purportedly transferred the property to the Trust, their intent for holding the property changed. The evidence does not establish any such change in petitioners' intent. The property was never rented nor otherwise changed by petitioners to income-producing property. See, e.g., <u>Newbre v. Commissioner</u>, T.C. Memo. 1971-165.

The stated purpose for the purported 1995 sale of the property by petitioners to the Trust was to prevent petitioners' former contractor from obtaining the property on which petitioners still intended to build their personal residence.

Petitioners' intent to build their personal residence on the property did not change at any time between petitioners' 1992 purchase of the property and petitioners' purported 1995 sale to the Trust, or thereafter.

Petitioners are not entitled to the capital loss carryover deductions claimed for 1998 and 1999.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.