Charles L. KNAPP and Beverley E. Knapp, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 478, Docket 88–4124.

United States Court of Appeals, Second Circuit.

Argued Dec. 1, 1988.

Decided Feb. 6, 1989.

Rehearing Denied April 4, 1989.*

Burt Neurborne, New York City (Norman Sinrich, Nancy W. Pierce, Chadbourne & Park, New York City, of counsel), for petitioners-appellants.

Teresa E. McLaughlin, Atty., Tax Div., Dept. of Justice, Washington, D.C. (William S. Rose, Jr., Asst. Atty. Gen., Gary R. Allen, Jonathan S. Cohen, Attys., Tax Div.,

Dept. of Justice, Washington, D.C., of counsel), for respondent-appellee.

Before LUMBARD, WINTER and MAHONEY, Circuit Judges.

WINTER, Circuit Judge:

Appellants Charles and Beverley Knapp appeal from a decision of the Tax Court determining a deficiency in their federal income tax for the year 1979. The dispute concerns the taxability of payments made by Mr. Knapp's employer, the New York University School of Law ("N.Y.U."), to educational institutions attended by the Knapps's children pursuant to a program in which N.Y.U. provided tuition assistance to the children of its faculty members. We hold that these payments did not fall within the scope of the exemption for scholarships provided in Section 117 of the Internal Revenue Code, 26 U.S.C. § 117 (as that section read in 1979). We also hold that the Tax Court's authority to redetermine deficiencies empowers that court to consider the provisions of the "Fringe Benefit Moratorium" ("Moratorium") enacted by Congress on October 7, 1978, Pub.L. No. 95-427, 92 Stat. 996 (1978). The Moratorium does not, however, affect the deficiency in question.

## BACKGROUND

The relevant facts are not in dispute. N.Y.U. qualifies as an educational institution under I.R.C. § 170(b)(1)(A)(ii) and is exempt from taxation under I.R.C. § 501(c)(3). In 1976, its law school adopted a policy of providing tuition assistance to the children of its faculty members. This program was administered by the Law Center Foundation ("LCF"), an organization established by N.Y.U. and also exempt from taxation under I.R.C. § 501(c)(3).

In 1979 the LCF program was available to all children of full-time faculty members and administrators with the rank of director, assistant dean or associate dean. To qualify for assistance the child had to be enrolled in a private elementary school, a private secondary school or a college. Neither the child's academic record nor the family's financial resources were con-

sidered in providing assistance. The payments were made by LCF directly to the school attended by the child.

In 1979, Knapp was both a tenured professor and an associate dean of the N.Y.U. Law School. By virtue of his positions, his two daughters, Jennifer and Liza, were eligible for, and received, tuition assistance from the LCF. Jennifer attended Swarthmore College while Liza attended the Brearley School. As a result, LCF made the following tuition payments directly to the respective schools:

| Date | School | Amount |
|------|--------|--------|
| January 4, 1979 | Swarthmore | $2,200 |
| January 4, 1979 | Brearley | $1,420 |
| August 14, 1979 | Swarthmore | $2,350 |
| August 14, 1979 | Brearley | $2,280 |
| | Total | $8,250 |

The Knapps did not report this $8,250 as income on their joint tax return filed for the year 1979. The Commissioner, however, determined that the tuition assistance constituted taxable income and issued a notice of deficiency to the Knapps. The Knapps then petitioned the Tax Court for a redetermination of the asserted deficiency. They claimed that: (i) the tuition assistance grants constituted non-taxable scholarships pursuant to I.R.C. § 117 and 26 C.F.R. § 1.117-3(a) (1979); and (ii) because taxes appear never to have been imposed on such payments, the Tax Commissioner was barred from taxing the tuition assistance grants by the "Fringe Benefit Moratorium" enacted by Congress, Act of October 7, 1978, Pub.L. No. 95-427, 92 Stat. 996 (1978), as extended. A majority of the Tax Court sustained the deficiency. In doing so, however, the majority was divided on the issue of whether the court had jurisdiction to enforce the Moratorium.

## DISCUSSION

This appeal raises three issues: (i) whether the Tax Court erred by finding that the tuition payments made by LCF to Swarthmore and Brearley were taxable income to the Knapps; (ii) whether the Tax Court has jurisdiction to enforce the Fringe Benefit Moratorium; and (iii) whether the Fringe Benefit Moratorium bars the Com-

missioner from including in the Knapps's taxable income the tuition assistance grants received by the Knapps's daughters from LCF. We will address these issues seriatim.

In 1979, Section 61(a) of the Internal Revenue Code, 26 U.S.C. § 61(a), defined gross income as "all income from whatever source derived, including ... [c]ompensation for services." "When assets are transferred by an employer to an employee to secure better services they are plainly compensation," *Commissioner v. LoBue*, 351 U.S. 243, 247, 76 S.Ct. 800, 803, 100 L.Ed. 1142 (1956), and no party to this litigation argues that the tuition assistance grants extended by LCF do not constitute compensation for the purposes of the Internal Revenue Code. Instead, the Knapps argue that the tuition assistance provided by LCF falls within the scope of the exemption for educational scholarships set out in Section 117(a) (as it read in 1979), a provision enacted by Congress in 1954. Section 117(a) stated:

§ 117. *Scholarships and fellowship grants*

*(a) General rule*

In the case of an individual, gross income does not include—

(1) any amount received—

(A) as a scholarship at an educational organization described in section 170(b)-(1)(A)(ii). . . .

Because Swarthmore and Brearley are undeniably "educational organizations," the only issue is whether the tuition assistance grants received by the Knapps's children constituted "scholarships" within the meaning of Section 117(a).

■ Section 117(a) does not exempt from income payments by employers generally for tuition assistance to the children of an employee as part of the employee's compensation. *Bingler v. Johnson*, 394 U.S. 741, 89 S.Ct. 1439, 22 L.Ed.2d 695 (1969). Application of that general principle to LCF's tuition assistance payments would clearly render them taxable. Appellants contend, however, that where the employer is an educational institution, Congress intended to exempt such payments. This contention rests solely upon the following remarks found in both the Senate and House Reports accompanying Section 117(a):

If àn educational institution ... maintains or participates in a plan whereby the tuition of a child of a faculty member of any such institution is *remitted at* any other participating educational institution ... attended by such child, the amount of tuition so remitted shall be considered to be an amount received as a scholarship under this section.

(emphasis added). H.R.Rep. No. 1337, 83d Cong., 2d Sess. A37, *reprinted in* 1954 U.S.Code. Cong. & Admin.News. 4017, 4173–74; S.Rep. No. 1622, 83d Cong., 2d Sess. 188, *reprinted in* 1954 U.S.Code Cong. & Admin.News 4621, 4823.

The applicable Regulation, Section 1.117–3(a), 26 C.F.R. § 1.117–3(a), stated (and still states) in pertinent part that: "[a] scholarship generally means an amount paid or allowed to, or for the benefit of, a student, whether an undergraduate or a graduate, to aid such individual in pursuing his studies." The final sentence of Regulation 1.117–3(a), however, is at the heart of the dispute in this case. That sentence, taken from the above-quoted language from the Senate and House Reports, provided for the exclusion from gross income of benefits provided under tuition remission arrangements between educational employers. It read as follows:

If an educational institution maintains or participates in a plan whereby the tuition of a child of a faculty member of such institution is *remitted by* any other participating educational institution attended by such child, the amount of the tuition so remitted shall be considered to be an amount received as a scholarship.

26 C.F.R. § 1.117–3(a) (emphasis added).

By exempting only payments by the school attended by the students pursuant to a tuition assistance arrangement, this sentence by implication excludes from the definition of scholarship payments by the employing institution. The payments at issue in the present case are thus not schol-

arships under the Regulation and are taxable income.

The Knapps argue that Congress intended to treat all tuition assistance payments by educational institutions, including employing institutions, for the benefit of the children of faculty members as non-taxable. In support, they correctly note that the language of Regulation 1.117–3(a) differs from the language of the congressional reports in that the former refers to the tuition being "remitted *by* " the other institution while the latter refer to the tuition being "remitted *at* " the other institution. The phrase "remitted at", the Knapps argue, calls for a construction which encompasses a tuition assistance program like LCF because "remitted at", unlike "remitted by", specifies only the payee rather than the payor. The Knapps thus contend that Regulation 1.117–3(a) is invalid.

We disagree. Even if "remitted at" specifies only the payee school, the language of the committee reports does not unambiguously establish the non-taxable status of the LCF grants. "Remitted at" an educational institution may easily, if not inevitably, be read to mean "remitted by". Faced with this ambiguity, we are obliged to defer to the view taken by the Regulation so long as it embodies a reasonable interpretation of the statutory language and legislative history. *Chevron U.S.A. v. Natural Resources Defense Council*, 467 U.S. 837, 844, 104 S.Ct. 2778, 2782, 81 L.Ed. 2d 694 (1984) ("a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency").

The Knapps asserts however, that the Regulation's construction of Section 117(a) treats similarly situated taxpayers differently and therefore makes no sense as tax policy. We are not persuaded. Scholarships are generally, although admittedly not always, provided by the institution attended by the child, and the Regulation in question exempts payments by such institutions. Moreover, the Regulation is clearly attempting to distinguish between tuition assistance payments that are a *quid pro quo* for a particular employee's services

and those that are not. The Regulation exempts tuition payments where the paying institution receives no direct benefit from the services of the employee and the payments in question are not direct compensation. We cannot say this is a wholly irrational line to draw.

Moreover, exemptions from taxation are to be construed narrowly, *Bingler v. Johnson*, 394 U.S. 741, 751–52, 89 S.Ct. 1439, 1445, 22 L.Ed.2d 695 (1969), and "exemptions from taxation are not to be implied; they must be unambiguously proved." *United States v. Wells Fargo Bank*, 485 U.S. 351, 108 S.Ct. 1179, 1182, 99 L.Ed.2d 368 (1988). Appellants simply have not "unamibiguously proved" that Congress intended grants extended by tuition assistance plans such as the LCF to be exempt from taxation. The language of the statute itself mentions only "scholarship[s] at … educational organizations." Nothing in this language constitutes a clearly stated intention on the part of Congress to provide a blanket tax exemption for the proceeds of tuition assistance programs by educational institutions that finance the education of the children of their faculty members at other schools. The ambiguous language of the committee reports is the only evidence of a legislative intent to exclude from taxation any and all tuition assistance programs educational institutions establish for the children of their faculty members attending other schools. We therefore conclude that taxation of the benefits the Knapps received from LCF was not precluded by Section 117(a).

▪ Concluding that Section 117(a) does not exempt the grants the Knapps received from the LCF does not fully resolve this appeal. On October 7, 1978, Congress enacted what has come to be known as the Fringe Benefit Moratorium. The Moratorium states in pertinent part:

SECTION 1. FRINGE BENEFIT REGULATIONS.

(a) IN GENERAL.—No fringe benefit regulation shall be issued—

(1) in final form on or after May 1, 1978, and on or before December 31, 1979, or

(2) in proposed or final form on or after May 1, 1978, if such regulation has an effective date on or before December 31, 1979.

(b) DEFINITION OF FRINGE BENEFIT REGULATION.—For purposes of subsection (a), the term "fringe benefit regulation" means a regulation providing for the inclusion of any fringe benefit in gross income by reason of section 61 of the Internal Revenue Code of 1954.

Pub.L. No. 95–427, 92 Stat. 996 (1978). The Moratorium thus statutorily bars the Commissioner from issuing any new regulations concerning the tax status of a fringe benefit. Absent from the Moratorium, however, was a clause granting the Tax Court jurisdiction to enforce its terms. Consequently, the Commissioner argues that the Tax Court lacks authority to compel compliance with the Moratorium. We disagree.

The Tax Court is a court of limited jurisdiction, *see Taylor v. Commissioner*, 258 F.2d 89, 93 (2d Cir.1958), possessing only those powers expressly conferred upon it by Congress. One of those powers, however, is the authority "to redetermine the correct amount of [a] deficiency" in income tax, 26 U.S.C. § 6214 (Supp. IV 1986), and to review both law and fact with respect to deficiencies. *Dobson v. Commissioner*, 320 U.S. 489, 501, 64 S.Ct. 239, 246, 88 L.Ed. 248 (1943). As an incident to these functions, the Tax Court must hear challenges to the validity of regulations in redetermining deficiencies. *CSX Corp. v. Commissioner*, 89 T.C. 134, 143–46 (1987). Because the Moratorium clearly affects the validity of regulations promulgated after the specified dates, the Tax Court is not only empowered, but also obligated, to apply it when it is relevant to a redetermination of a challenged deficiency. In the present case, therefore, the Tax Court

should have considered the Moratorium's provisions when examining the Commissioner's assertion of a deficiency.

█ We now consider the impact of the Moratorium, if any, on the taxability of the LCF tuition assistance grants. As drafted, the Moratorium precludes the issuance of any regulations concerning fringe benefits after the specified dates. The present case, however, does not involve the promulgation of any such regulation. The Knapps claim, however, that the provisions of the Moratorium must be interpreted in light of the House Report accompanying its enactment which stated in pertinent part:

> While the provisions of this bill relate only to the issuance of regulations, it is the intent of the committee that the Treasury Department will not alter, or deviate from, in any significant way the historical treatment of fringe benefits through the issuance of revenue rulings or revenue procedures, etc.

H.R.Rep. No. 1232, 95th Cong., 2d Sess. 5, *reprinted in* 1978 U.S.Code Cong. & Admin.News 2508, 2510. The Knapps thus contend that Congress intended the Moratorium to freeze the administrative practice concerning the taxation of scholarships for faculty children as of October 1, 1977. Finally, the Knapps argue that as of October 1, 1977, the administrative *status quo* was that tuition assistance grants such as those extended by LCF were nontaxable. To support this contention the Knapps rely upon private letter rulings and technical advice memoranda.

It appears that tuition payments of the kind at issue here were not in practice taxed before the Moratorium—that is, the Commissioner never brought a proceeding to collect such a tax[1]—and that certain private letter rulings and technical advice memoranda support the Knapps's position.

---

**1.** It is not at all clear that the non-taxation of such payments has resulted from a deliberate forebearance by the Commissioner based on an interpretation of the meaning of Section 117(a) or from the failure of educational institutions and their employees to report such payments. We believe it self-evident that a failure to tax such payments resulting solely from a combination of lack of resources on the Commissioner's part and non-reporting by educational institutions and taxpayers does not constitute a frozen "historical treatment," even under the House Committee's view of the Moratorium. This particular problem does, however, illustrate the difficulty in substituting the language of the House Report—which includes, *inter alia,* as examples of "historical treatment" the word "etc."—for the language of the statute.

Nevertheless, we do not believe that the Moratorium applies. The Supreme Court "[has] repeatedly recognized that '[w]hen ... the terms of a statute [are] unambiguous, judicial inquiry is complete, except "in 'rare and exceptional circumstances.' " ' In the absence of a 'clearly expressed legislative intention to the contrary,' the language of the statute itself 'must ordinarily be regarded as conclusive.' " *United States v. James*, 478 U.S. 597, 606, 106 S.Ct. 3116, 3122, 92 L.Ed.2d 483 (1986) (citations omitted).

The language of the Moratorium limiting its effect to the promulgation of new regulations could hardly be more plain. Indeed, the House Report in question concedes that the statutory language is so limited but goes on to state that the Committee does not agree with that language. We cannot infer, however, that the Senate also meant something other than what the statute said, or that the executive—the branch entrusted with authority to enforce the tax laws—also understood the statutory language to be in error. Moreover, I.R.C. § 6110(j)(3) provided that private rulings and technical advice memoranda were not to be cited or treated as precedent, a position quite at odds with the statement in the House Report and the contentions advanced by the Knapps.

Against these rulings and memoranda is the Regulation that preceded the Moratorium that, as explicated above, exempted only tuition assistance programs that are arranged between various schools. If Congress wanted the Moratorium to extend beyond existing regulations, it could have done so by expressly stating that intention in the statute. Congress, however, elected not to do so. Consequently, we will apply the statute as drafted. Because the instant case does not involve new regulations, the Moratorium is inapplicable.

We therefore affirm the Tax Court.