T.C. Memo. 2016-2

UNITED STATES TAX COURT

DIANE BLAGAICH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5613-13.                              Filed January 4, 2016.

P received property and cash from her boyfriend, B, which she did not report as income. Following P and B's breakup, B reported those transfers to R on a Form 1099-MISC, Miscellaneous Income, as paid to P. Subsequently, a State court found that P had fraudulently induced B to pay her $400,000 and ordered P to repay that amount to B. The State court found that other cash and property were gifts, which P did not have to return to B. R increased P's gross income by the amount reported on the Form 1099-MISC.

1. <u>Held</u>: P's motion for summary adjudication that R is collaterally estopped from litigating the State court's gift finding is denied because P has failed to demonstrate that R was in privity with a party to the State court action.

2. <u>Held</u>, <u>further</u>, P's motion for summary adjudication that the doctrine of rescission applies to eliminate from her gross income the $400,000 that she received and claims she repaid in a subsequent year is denied because P did not repay the $400,000 in the year of receipt,

[*2]  nor in that year did she recognize the liability under an existing and fixed obligation to repay it.


Denice A. Gierach and Tamara M. Paulun, for petitioner.

Lauren N. May, for respondent.


MEMORANDUM OPINION

HALPERN, Judge:  Respondent determined a deficiency in, and an accuracy-related penalty with respect to, petitioner's 2010 Federal income tax. Petitioner has raised the affirmative defense of collateral estoppel and moves for summary adjudication in her favor as to a portion of respondent's adjustment giving rise to the deficiency on the ground that respondent is estopped from denying that, in 2010, she received a gift.  She moves for summary adjudication in her favor as to the remainder of the adjustment on the ground that the doctrine of rescission applies to exclude from her 2010 gross income a $400,000 payment she received in that year.  Respondent objects to our granting the motion, and, for the reasons stated, we will deny it.

**[\*3]**  Unless otherwise stated, all section references are to the Internal Revenue Code of 1986 as in effect for 2010, and all Rule references are to the Tax Court Rules of Practice and Procedure.

Summary judgment is appropriate "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits or declarations, if any, show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b).  The moving party bears the burden of proving that no genuine dispute as to any material fact exists, and we will draw any factual inferences in the light most favorable to the nonmoving party.  See, e.g., Anonymous v. Commissioner, 134 T.C. 13, 15 (2010).

## Background

We rely on facts drawn from the record that we believe are not reasonably in dispute.  The determined deficiency arises in connection with cash and other property given to petitioner in 2010 by Lewis E. Burns.

### The Relationship and the Contract

Mr. Burns and petitioner were involved in a romantic relationship from November 2009 until March 2011.  In 2010, petitioner was 54 years old; Mr. Burns was 72.  Both resided in suburbs of Chicago, Illinois.  In 2010, Mr. Burns

**[*4]** provided petitioner with cash and other property totaling in value at least $743,819. Before November 29, 2010, he wired to her bank account $200,000, gave her a $70,000 Corvette automobile, and wrote her various checks totaling $73,819 (in all, $343,819). On November 29, 2010, petitioner and Mr. Burns entered into a written agreement (agreement) intended in part to confirm their commitment to each other and to provide financial accommodation for her. Neither petitioner nor Mr. Burns desired to marry, and the agreement was, at least in some respects, intended to formalize their "respect, appreciation and affection for each other" in the way a marriage otherwise would do. The agreement provides that the parties "shall respect each other and shall continue to spend time with each other consistent with their past practice", and that both "shall be faithful to each other and shall refrain from engaging in intimate or other romantic relations with any other individual". The agreement also requires Mr. Burns to make an immediate payment of $400,000 to petitioner, which he did do.

Deterioration of the Relationship, the Civil Suit, and the Form 1099-MISC

Mr. Burns' relationship with petitioner quickly deteriorated in the months following execution of the agreement. On March 10, 2011, petitioner moved out of Mr. Burns' residence for the last time, and, the next day, Mr. Burns sent petitioner a notice of termination of the agreement. Shortly thereafter, Mr. Burns

**[*5]** came to believe that, contrary to her assurances, petitioner had been involved in an ongoing romance with another man throughout their relationship.

Late in March 2011, Mr. Burns initiated a civil suit against petitioner in the Circuit Court for the Eighteenth Judicial District, DuPage County, Illinois (sometimes, State court action). The complaint sought, among other things, nullification of the agreement, petitioner's return of the Corvette automobile and a diamond "engagement ring", and a further order directing petitioner to "disgorge all cash and other accommodations that * * * [Mr. Burns] provided to her, totaling in excess of $700,000." On April 8, 2011, Mr. Burns caused to be filed with the Internal Revenue Service a Form 1099-MISC, Miscellaneous Income (original Form 1099-MISC), reporting that he had paid petitioner $743,819 in 2010. That amount reflected Mr. Burns' transfer to petitioner in 2010 of the $200,000 wired to her account, the Corvette automobile worth $70,000, the various checks totaling $73,819, and the $400,000 payment made pursuant to the agreement.

We filed the petition in this case on March 8, 2013. Respondent learned of the State court action and in May 2013 wrote to counsel for petitioner and requested, among other things, copies of any depositions taken in the case and filings and motions relating to the original Form 1099-MISC and the fraudulent inducement claim. In October 2013, petitioner moved for a continuance in this

[*6] case on account of the pending State court action. She reported that respondent did not object, and we continued the case.

Resolution of the Civil Suit

A trial was held in the State court action, and, in November 2013, the State court issued an opinion and order. With respect to the agreement, the State court found that petitioner had fraudulently induced Mr. Burns to enter into it, and the court entered a judgment against petitioner of $400,000, payable to Mr. Burns' estate (he having passed away shortly after the trial). With respect to the Corvette automobile, the $200,000 wire transfer, and various checks that Mr. Burns had given petitioner, the State court found as follows. He had given her the Corvette automobile because he did not want her to ride her Harley Davidson motorcycle, which activity frightened him. He had wired the $200,000 to her account to entice her to leave her job and to travel with him, and he gave her the various checks, totaling $73,819, under similar circumstances. The State court's ultimate finding was that the Corvette, the $200,000 wire transfer, and the various checks were "clearly gifts" from Mr. Burns to petitioner and that she was entitled to keep them.[1] Subsequently, one of the executors of Mr. Burns' estate issued a revised

---

[1]Likewise, she could keep the "engagement ring", which, the court concluded, was not an engagement ring, since "[a]n engagement ring is a gift

(continued...)

[*7] 2010 Form 1099-MISC reducing the amount of compensation reported as paid to petitioner in that year to $400,000.  On March 25, 2014, the executor mailed a letter to the Internal Revenue Service, a copy of the revised Form 1099-MISC attached, confirming that petitioner had paid $400,000 in compliance with the State court order.

Respondent's Adjustments Leading to the Deficiency

Respondent made a positive adjustment of $743,819 to petitioner's reported 2010 gross income to reflect that amount reported on the original Form 1099-MISC.  Other adjustments appear to be computational.  The penalty relates to the purported inaccuracy of the return.

Discussion

I.    The Motion and Respondent's Objection

Petitioner asks the Court to take notice of the State court's finding that, other than the agreed payment to her of $400,000, all other cash amounts and property paid or given to her by Mr. Burns were "clearly gifts".  She further asks the Court to hold, on the basis of that notice, that respondent is estopped from

---

[1](...continued)
given on the condition of marriage", and petitioner and Mr. Burns did not intend to marry.  Nevertheless, the court found that the reasonable inference to be determined from the facts was that it was a gift.

[*8] denying that $343,819 of his adjustment to petitioner's 2010 gross income represents the value of gifts that she received from Mr. Burns. Because gross income does not include the value of property acquired by gift, see sec. 102(a), petitioner argues that the determined deficiency must be reduced by the amount attributable to $343,819. As to the remaining deficiency, attributable principally to petitioner's receipt of the agreed-to payment of $400,000, petitioner argues that the return of that money to Mr. Burns' estate in 2014 invokes the equitable doctrine of rescission, reducing respondent's adjustment by another $400,000 and, with collateral adjustments, eliminating all grounds for a deficiency in her 2010 income tax.[2] If petitioner is correct in both arguments, elimination of the accuracy-related penalty would follow.

Respondent objects to our granting the motion. Respondent argues he is not estopped from maintaining that the cash and property petitioner received before November 29, 2010, were not gifts because he was not a party, nor in privity with any party, to the State court action. He further argues that the rescission doctrine

---

[2]Because petitioner relies on rescission, we have assumed for the purposes of disposing of the motion that the claim-of-right doctrine is relevant and that the $400,000 payment would be taxable to petitioner unless the cited rescission exception applies. We note that the petition assigns error to respondent's inclusion of the $400,000, stating that the payment was a nontaxable gift, which we do not here decide.

**[*9]** is inapplicable given petitioner's failure to return the $400,000 to Mr. Burns in 2010.

II.    Analysis

   A.    Collateral Estoppel

The original Form 1099-MISC reports miscellaneous income of $743,819. The State court found, in effect, that $343,819 of that amount represented gifts that Mr. Burns gave petitioner in 2010.  We have described the effect of collateral estoppel as follows:  "Basically, collateral estoppel precludes parties (and their privies) from relitigating issues actually and necessarily litigated and decided in a final prior judgment by a court of competent jurisdiction."  Peck v. Commissioner, 90 T.C. 162, 166 (1988), aff'd, 904 F.2d 525 (9th Cir. 1990).  Respondent, however, was not a party to the State court action, nor, as we explain, was he a privy to a party or otherwise sufficiently connected to a party.  For that reason, petitioner's collateral estoppel defense fails, and whether the $343,819 of respondent's adjustment represents nontaxable gifts remains a disputed question of fact.[3]

_____

[3]We note in passing that, while a voluntary transfer may constitute a "gift" in the common law sense, the transfer might not constitute a "gift" as the term is used in sec. 102(a), excluding from gross income "the value of property acquired by gift, bequest, devise, or inheritance."  See Commissioner v. Duberstein, 363

(continued...)

**[*10]** Generally speaking, privity contemplates "substantial identity" between a party of record and an unnamed third party. United States v. ITT Rayonier, Inc., 627 F.2d 996, 1003 (9th Cir. 1980) (citing Chi., R.I. & P. Ry. Co. v. Schendel, 270 U.S. 611, 621 (1926)). Such a finding is most easily made when the party against whom estoppel is asserted had some active, participatory role in the earlier litigation. See Montana v. United States, 440 U.S. 147, 154 (1979). Alternatively, courts have recognized that a nonparty may be bound where its interests are so closely aligned with those of a named party that the named party effectively served as its "virtual representative" in the previous suit. Fine v. Commissioner, T.C. Memo. 1989-640 (citing ITT Rayonier, Inc., 627 F.2d at 1003). A finding of privity involves a question of fact. Donovan v. Estate of Fitzsimmons, 778 F.2d 298, 301 (7th Cir. 1985).

---

[3](...continued)
U.S. 278, 285 (1960) (stating that the statute uses the term "gift" in a more colloquial sense: "the mere absence of a legal or moral obligation to make * * * a payment does not establish that it is a gift"); Farid-Es-Sultaneh v. Commissioner, 160 F.2d 812, 815 (2d Cir. 1947) (finding that title to stock was acquired by purchase and not by gift when shares were received in consideration of promise to marry coupled with promise to relinquish marital rights to fiance's property), rev'g 6 T.C. 652 (1946). We need not decide whether the State court found the elements of a sec. 102(a) gift since respondent is not barred by collateral estoppel from relitigating facts found by the State court.

**[*11]** None of the relevant facts recited by petitioner in her motion bears on the issue of privity. Petitioner claims "[respondent] knew of the State court matter and requested, and received, updates, pleadings, and discovery documents regarding the same." While that may be true, the mere fact that respondent took steps to keep himself apprised of litigation to which petitioner was a party cannot, without more, lead us to conclude that there existed any working relationship or coincidence of interests between respondent and either petitioner or Mr. Burns. Petitioner's claim that respondent agreed to a continuance of the Tax Court matter pending outcome of the State court action "in light of the similar issues involved" also does not establish his controlling role in the State court action. Lastly, petitioner's claim that, after the State court action was completed, respondent acknowledged that "amounts determined by the State Court to be gifts should not be included on the Form 1099-MISC", even if true, came <u>after</u> the action and is hardly evidence of his control of, or involvement in, the trial of the case.

The limited factual assertions petitioner makes in her argument fail to demonstrate any collaboration or genuine alignment of interests between respondent and either party to the State court action. Because petitioner has failed to carry her burden by providing undisputed facts sufficient to establish privity,

[*12] she has failed to establish an element necessary to the defense of collateral estoppel. She may not avail herself of that defense, as pleaded.

B.      Rescission

We assume that petitioner is a cash method taxpayer. See sec. 446(c). Section 451(a) provides in pertinent part: "The amount of any item of gross income shall be included in the gross income for the taxable year in which received by the taxpayer". That section reflects the annual accounting period principle, which requires that each taxable year be treated as a separate unit for tax accounting purposes. E.g., Schultz v. Commissioner, 59 T.C. 559, 563 (1973). The annual accounting period principle allows for a definite, periodic determination of the Government's revenues and prevents extended delays that would occur if transactions were held open indefinitely for the computation of profit and loss. See Burnet v. Sanford & Brooks Co., 282 U.S. 359, 365 (1931).

The need for certainty in allocating items to the appropriate period gives rise to the claim-of-right doctrine. A taxpayer receives income under a claim of right whenever she "acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied, of an obligation to repay and without restriction as to their disposition". James v. United States, 366 U.S. 213, 219 (1961). Under the claim-of-right doctrine, laid out by the Supreme Court in N.

[*13] Am. Oil Consol. v. Burnet, 286 U.S. 417, 424 (1932): "If a taxpayer receives earnings under a claim of right * * * , he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent."

The doctrine of rescission represents a minor exception to the claim-of-right doctrine. Pursuant to the exception, a taxpayer need not report as an item of gross income an amount received under a claim of right if the recipient's right to the amount is rescinded and, within the year of receipt, the parties to the payment are restored "to the relative positions that they would have occupied had no contract been made." The rule is so stated in Rev. Rul. 80-58, 1980-1 C.B. 181. See also Penn v. Robertson, 115 F.2d 167, 175 (4th Cir. 1940) ("[T]he rescission in 1931 before the close of the calendar year * * * extinguished what otherwise would have been taxable income to * * * [the taxpayer] for that year."). In general, the annual accounting period principle reflected in section 451, considered in the light of the judicially articulated claim-of-right doctrine, limits application of the rescission exception such that, without regard to subsequent events, income received by the taxpayer under a claim of right and retained by her at the close of

**[*14]** the taxable year must be included in gross income for that year.  See id.;

Rev. Rul. 80-58, Situation 2, 1980-1 C.B. at 182.

Petitioner relies on Hope v. Commissioner, 55 T.C. 1020, 1030 (1971),

aff'd, 471 F.2d 738 (3d Cir. 1973), which suggests that the rescission doctrine may

apply even when repayment of a gain does not formally occur in the year of

receipt, but only if, before the end of the year, "[the] taxpayer recognizes his

liability under an existing and fixed obligation to repay the amount received and

makes provisions for repayment."  Nothing in the facts presented indicates

petitioner recognized such a liability, much less made provision for repayment, in

2010, the year she received the $400,000.  Indeed, the record shows petitioner

maintained, at least until November 2013, that she was under no obligation

whatsoever to return the money paid to her under the agreement.  Putting aside

petitioner's questionable analogy regarding "a lack of control over the rescission",

the suggestion in Hope is inapplicable to the facts of this case.

Petitioner also relies on Guffey v. United States, 339 F.2d 759 (9th Cir.

1964), for the proposition that a post-year-of-receipt rescission can be given

retroactive tax effect.  In Guffey, the installment purchasers of the Guffeys' home

sued to rescind the sale contract when, in the following year, they discovered dry

rot, moved out, and refused to make further payments.  A settlement was reached

**[*15]** under which the purchasers' suit was dismissed and the Guffeys obtained a quitclaim deed and retained the previously received payments as rent. They later resold the property for less than the original contract price and, on that account, claimed a loss deduction. The Court of Appeals rejected the claimed loss deduction as a nondeductible personal loss, finding: "[I]n reality, the three transactions here involved, the first contract of sale, the rescission arising out of the litigation brought by the buyers, and the re-sale, are one transaction whereby the taxpayers sold their home." Id. at 761. The Guffeys' tax years in which they received payments from the original purchasers of their home were not in issue. And while the Court of Appeals did state that "[i]t can fairly be said that the settlement with the * * * [original purchasers] was, in substance, a reduction in the purchase price", id., the Guffeys returned nothing to the original purchasers, the original purchasers apparently agreeing that the payments could be kept as rent. The sort of passive unwinding of the agreement that occurred in Guffey did not and could not occur in the case at bar; the only way Mr. Burns could be restored to status quo ante was if petitioner returned the $400,000. Whatever Guffey might say about the characterization of a receipt retained by a taxpayer following a rescission, it speaks nothing to a case such as this where rescission requires full repayment.

[*16] The facts show that, in 2010, petitioner took possession of the whole amount in question, $400,000, without any substantial limitations or restrictions as to its disposition. She recognized no liability and made no provision to repay that amount until nearly three years later. None of the cases petitioner cites as allowing a "relaxation" of the same-year requirement for rescission is factually comparable to her own, and they provide no rationale for departing from the general rule.

With respect to the equitable concerns petitioner raised in her motion--"The equities in this case simply do not support strict adherence to the one-year guideline in the rescission doctrine."--we note only that our statutory mandate does not permit us to decide this case on the basis of general principles of equity. See Knapp v. Commissioner, 90 T.C. 430, 440 (1988) (citations omitted) ("The Tax Court is a court of limited jurisdiction. * * * We have only the powers expressly conferred on us by Congress, and may not apply equitable principles to expand our jurisdiction beyond the limits of section 7442."), aff'd, 867 F.2d 749 (2d Cir. 1989).

The doctrine of rescission does not save petitioner from respondent's adjustment including in her 2010 gross income the $400,000 that, in that year, she received from Mr. Burns.

[*17] III.    <u>Conclusion</u>

As stated, we will deny the motion.  To reflect the foregoing,

<u>An order denying the motion will be</u>

<u>issued</u>.