**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

BRYON STAFFORD, on behalf of himself and all others similarly situated,

*Plaintiff-Appellee*,

v.

RITE AID CORPORATION,

*Defendant-Appellant*.

No. 20-55333

D.C. Nos.
3:17-cv-01340-AJB-JLB
3:18-cv-00152-AJB-JLB

OPINION

Appeal from the United States District Court
for the Southern District of California
Anthony J. Battaglia, District Judge, Presiding

Argued and Submitted April 12, 2021
Pasadena, California

Filed May 21, 2021

Before: MILAN D. SMITH, JR., SANDRA S. IKUTA,
Circuit Judges, and KATHRYN H. VRATIL,[*]
District Judge.

Opinion by Judge Milan D. Smith, Jr.

---

[*] The Honorable Kathryn H. Vratil, United States District Judge for the District of Kansas, sitting by designation.

# SUMMARY[**]

## Arbitration

The panel affirmed the district court's order denying Rite Aid Corporation's motion to compel arbitration in a putative class action alleging that Rite Aid fraudulently inflated the reported prices of prescription drugs to insurance companies, which resulted in class members paying Rite Aid a higher co-payment for their drugs.

Although Rite Aid and lead plaintiff Bryon Stafford had no contract between them containing an arbitration clause, Rite Aid did have such contracts with the intermediaries who coordinated insurance reimbursement and co-payment calculations, called "pharmacy benefits managers."

The panel held that, under California law, Stafford's claims did not depend on Rite Aid's contractual obligations to the pharmacy benefits managers. Consequently, equitable estoppel did not apply to bind Stafford to the arbitration agreements in those contracts. The panel affirmed the district court's denial of Rite Aid's arbitration motion to compel arbitration, and remanded for further proceedings.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Stephanie Schuster (argued) and Bryan Killian, Morgan, Lewis & Bockius LLP, Washington, D.C.; J. Warren Rissier and Joseph Bias, Morgan, Lewis & Bockius LLP, Los Angeles, California; for Defendant-Appellant.

Andrew S. Love (argued), Robbins Geller Rudman & Dowd LLP, San Francisco, California; David W. Mitchell, Brian O. O'Mara, Robert R. Henssler Jr., and Arthur L. Shingler III, Robbins Geller Rudman & Dowd LLP, San Diego, California; for Plaintiff-Appellee.

**OPINION**

M. SMITH, Circuit Judge:

Bryon Stafford brought a class action against Rite Aid Corporation, alleging that Rite Aid fraudulently inflated the reported prices of prescription drugs to insurance companies. Stafford alleged that this resulted in class members paying Rite Aid a higher co-payment for the drugs than they would have paid if Rite Aid had reported the correct price to their insurance companies.

After filing and litigating several motions to dismiss, Rite Aid moved to compel arbitration. Although Rite Aid and Stafford had no contract between them containing an arbitration clause, Rite Aid *did* have such contracts with the intermediaries who coordinated insurance reimbursements and co-payment calculations, called "pharmacy benefits managers." Rite Aid sought to compel Stafford to arbitrate through the theory of equitable estoppel, contending that Stafford's claims were intertwined with Rite Aid's contracts

with the pharmacy benefits managers. According to Rite Aid, it would be unfair to permit Stafford to sue in court for relief provided by contracts with arbitration clauses.

The district court denied Rite Aid's motion to compel arbitration. We have jurisdiction pursuant to 9 U.S.C. § 16, and we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Bryon Stafford used his third-party insurance coverage to purchase prescription drugs from Rite Aid's pharmacies. To facilitate insurance coverage for customers, Rite Aid submits a claim for a prescription drug to an insurance company through a "pharmacy benefits manager," which the parties and district court refer to as a PBM. The claim form that Rite Aid submits includes the "usual and customary" price of the relevant prescription drug. According to Stafford's complaint, "usual and customary" is a term of art that is defined using an industry-specific standard: the "[a]mount charged cash customers for the prescription exclusive of sales tax[.]" The usual and customary price is essential information for insurance companies because it governs how much of the cost an insurance company will pay, and how much must be borne by the customer. Rite Aid's contracts with pharmacy benefits managers also require Rite Aid to submit the usual and customary price of the prescription drug. These contracts—between Rite Aid and various pharmacy benefits managers—contain agreements to arbitrate contractual disputes.[1]

---

[1] Rite Aid's opening brief states that the contracts with pharmacy benefits managers "are executed and handled by Rite Aid HQ, a subsidiary that provides corporate-level managerial services," and not by

Under the terms of many insurance plans, the amount that the plan participant must pay for the prescription drug is a percentage of the usual and customary price. Therefore, the higher the usual and customary price reported to the pharmacy benefits manager, the higher the price will be to the consumer.

Rite Aid offered a discount program—called the Rx Savings Program—for customers who did not use insurance benefits to pay for their prescriptions. Rite Aid allegedly reported a usual and customary price to pharmacy benefits managers that exceeded the amount an uninsured customer paid for that same prescription drug under the Rx Savings Program. The heart of Stafford's suit is that Rite Aid falsely reported a usual and customary price that exceeded the "[a]mount charged cash customers for the prescription" to all insurance companies that paid out claims to Rite Aid. This resulted in Stafford paying *more* by using his insurance benefit than he would have paid without it.

Stafford brought this suit as a putative class action, seeking to certify the following Class and Subclass:

> *Class:* All persons or entities in the United States and its territories who, between January 2008 and the present ("Class

---

Rite Aid itself, which "is a holding company with no employees." Rite Aid provides no citations to the record to support these statements, which contradict its representations to the district court in its motion to compel arbitration. Nor does Rite Aid explain the relevance of Rite Aid's corporate structure to this dispute—except by implying that Rite Aid and Stafford are on equal footing because neither actually signed the contract. This argument both strains credulity and is ultimately irrelevant due to our holding that Stafford is not equitably estopped from pursuing his claims in court.

Period"), paid for, in full or in part, a prescription generic drug included on the [Rx Savings Program] formulary and were insured for the purchase through a third-party payor.

*Subclass:* All persons or entities in the state of California who, during the Class Period, paid for, in full or in part, a prescription generic drug included on the [Rx Savings Program] formulary and were insured for the purchase through a third-party payor.

Stafford filed a First Amended Complaint on July 28, 2017, which Rite Aid moved to dismiss for failure to state a claim, and for being time-barred. The district court dismissed the First Amended Complaint without prejudice on the statute of limitations ground. Stafford's Second Amended Complaint included factual allegations sufficient to support a claim that the statute of limitations was tolled, and the district court denied Rite Aid's second motion to dismiss for failure to state a claim. Rite Aid then moved to compel arbitration.

The district court denied the motion to compel arbitration. The district court held that principles of equitable estoppel did not bind Stafford to the arbitration agreements in contracts to which he was not a signatory, because Stafford's claims are not based on Rite Aid's breach of its contracts with the pharmacy benefits managers. Instead, Stafford sought recovery under California law for Rite Aid's fraudulent claims to the pharmacy benefits managers that had the effect of increasing the cost of Stafford's prescription drugs. The district court also rejected Rite Aid's contention that an arbitrator ought to decide arbitrability on the grounds that (1) there was no valid

arbitration clause; and (2) Stafford could not have clearly and unmistakably agreed to submit arbitrability to an arbitrator because he was not a signatory to the contract. Finally, the district court held that Rite Aid had waived its right to arbitrate the dispute in any event. Rite Aid appealed.

On appeal, Rite Aid argues that equitable estoppel binds Stafford to arbitrate his claims because his claims are based in part on the contracts between Rite Aid and the pharmacy benefits managers. Second, Rite Aid contends that the dispute over whether the claims must be arbitrated must itself be submitted to arbitration under those contracts' delegation clauses. Finally, Rite Aid maintains that it did not waive its right to arbitrate because it could not have known that Stafford's claims were based on the contracts prior to conducting discovery.

## ANALYSIS

"Equitable estoppel generically precludes a party from asserting rights he otherwise would have had against another when his own conduct renders assertion of those rights contrary to equity." *Goldman v. KPMG, LLP*, 92 Cal. Rptr. 3d 534, 542 (Ct. App. 2009) (internal quotation marks and citation omitted). Pursuant to the equitable estoppel doctrine, a plaintiff may be bound to an arbitration clause in a contract he did not sign if the claims asserted are "dependent upon, or founded in and inextricably intertwined with, the underlying contractual obligations of the agreement containing the arbitration clause."[2] *Id.* at 540. However, if

---

[2] Originally, equitable estoppel was applied to bind *signatory* plaintiffs to arbitration when suing *nonsignatory* defendants. *See Goldman*, 92 Cal. Rptr. 3d at 537. More recently, the doctrine has been applied to claims by nonsignatory plaintiffs suing signatory defendants,

the plaintiffs' claims merely "reference [ ] an agreement with an arbitration clause," equitable estoppel will not warrant compelling arbitration. *Id.* at 541. The touchstone for equitable estoppel is whether "a nonsignatory is 'relying on an agreement for one purpose while disavowing the arbitration clause of the agreement.'" *Namisnak v. Uber Techs., Inc.*, 971 F.3d 1088, 1095 (9th Cir. 2020) (quoting *Goldman*, 92 Cal. Rptr. 3d at 551). In that instance, "the plaintiff should be equitably estopped from repudiating the contract's arbitration clause." *JSM Tuscany*, 123 Cal. Rptr. 3d at 443. Ultimately, "[t]he linchpin for equitable estoppel is . . . fairness." *UFCW & Emps. Benefit Tr. v. Sutter Health*, 194 Cal. Rptr. 3d 190, 206 (Ct. App. 2015) (internal quotation marks and citation omitted).

Stafford's complaint alleges that Rite Aid violated California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et. seq.*) and the California Consumer Legal Remedies Act (Cal. Civ. Code § 1770(a), *et seq.*) by "reporting to insurance companies, and state and federal health care entities fraudulent 'usual and customary' prices"; concealing that the "usual and customary" price reported was higher than the actual usual and customary price; and, as a result, "wrongfully obtaining monies from Plaintiff and the Subclass."[3] Stafford also alleged a common law claim

---

which is the case here. *JSM Tuscany, LLC v. Superior Ct.*, 123 Cal. Rptr. 3d 429, 443 (Ct. App. 2011).

[3] Pursuant to § 17200, Rite Aid had a duty not to engage in, among other things, "any unlawful, unfair or fraudulent business act or practice" or any "unfair, deceptive, untrue or misleading advertising," including acts proscribed by § 17500. And pursuant to § 1770(a)(13), among other provisions in that statute, Rite Aid had a duty not to "mak[e] false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions."

for unjust enrichment on the theory that Rite Aid's allegedly fraudulent usual and customary price reporting was "unfair and unconscionable," and "it is inequitable for Rite Aid to be permitted to retain the benefits it received . . . from the imposition of artificially inflated prices on Plaintiff, the Class, and Subclass[.]" Finally, Stafford alleged a common law claim for negligent misrepresentation, contending that Rite Aid owed a duty to Stafford to "provide [him] with accurate information regarding the prices of its generic prescription drugs," and breached that duty by knowingly submitting false information to pharmacy benefits managers, causing Stafford to pay a higher copayment than the actual price of the prescription drug.

Stafford is not seeking damages for Rite Aid's breach of its contracts with the pharmacy benefits managers. Instead, Stafford's causes of action are based on Rite Aid's misrepresentations to the pharmacy benefits managers of the usual and customary price of Stafford's prescriptions drugs. Stafford claims that "usual and customary price" is defined by industry standards and means the "[a]mount charged cash customers for the prescription exclusive of sales tax[,]" and that the language of the contracts is the genesis of this definition. Stafford alleges that Rite Aid told the pharmacy benefit managers that the "[a]mount charged cash customers for the prescription exclusive of sales tax" was higher than it actually was.

It is irrelevant whether the contracts between Rite Aid and the pharmacy benefits managers required Rite Aid to report the usual and customary price of a prescription drug. Even if the contracts contained no provision requiring Rite Aid to report the usual and customary price, the fact remains that Rite Aid *did* report that information and allegedly purposely inflated it. Rite Aid's duty not to commit fraud is

independent from any contractual requirements with the pharmacy benefit managers. As noted, statutes and common law—not provisions in the contracts—entitle Stafford to relief. The principles of equitable estoppel therefore do not require Stafford to submit to the arbitration clauses of contracts between Rite Aid and the pharmacy benefits managers.

## CONCLUSION

Stafford's claims do not depend on Rite Aid's contractual obligations to the pharmacy benefits managers. Consequently, equitable estoppel does not apply to bind Stafford to the arbitration agreements in those contracts. We affirm the judgment of the district court and remand for further proceedings consistent with this opinion.

**AFFIRMED.**