# United States Tax Court

T.C. Memo. 2023-91

JAMES H. KIM,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

—————

Docket No. 18582-21.                                    Filed July 20, 2023.

—————

James H. Kim, pro se.

*Laura L. Bates* and *John S. Hitt*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

LAUBER, *Judge*: With respect to petitioner's Federal income tax for 2013 and 2017, the Internal Revenue Service (IRS or respondent) determined deficiencies of $12,310 and $1,572,391, respectively, plus accuracy-related penalties.[1] The deficiencies are attributable to short- and long-term capital gains petitioner realized in virtual currency transactions.

Petitioner does not dispute the amounts of gain determined by respondent. But he contends that the IRS is estopped from collecting tax on these gains. Representing that he suffered large losses on cryptocurrency transactions in 2020, he contends that these losses were caused or exacerbated by the Government's actions (or inaction) in response to the COVID epidemic. Unable to carry his 2020 losses back to 2017— individual taxpayers are permitted to carry capital losses forward, but

———————————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times.

[*2] not back—he contends that the "unclean hands" doctrine prevents the IRS from taxing his 2013 and 2017 gains. Although we have sympathy for petitioner's predicament, we are unable to accept his argument.

FINDINGS OF FACT

The following facts are derived from the parties' pleadings, a Stipulation of Facts with attached Exhibits, two Stipulations of Settled Issues, and the testimony received at trial. Petitioner resided in Washington when his Petition was timely filed.

For the tax years at issue, the IRS received information reports from Coinbase, Inc. (Coinbase), a virtual currency exchange, reporting the proceeds of petitioner's transactions in Bitcoin (BTC) (during 2013–2016) and in BTC, Litecoin (LTC), and Etherium (ETH) (during 2017). On timely filed Forms 1040, U.S. Individual Income Tax Return, for 2013–2016, petitioner reported no gains or losses from these transactions for those years. For 2017 he received an information return from Coinbase that reported $18,557,230 of proceeds from virtual currency transactions. On the Schedule D, Capital Gains and Losses, included in his 2017 return, he reported gross proceeds in that amount but offset against those proceeds a claimed basis of $18,515,161, reporting a short-term capital gain of $42,069.

The IRS selected petitioner's 2013–2017 returns for examination. When petitioner did not supply a computation of his cryptocurrency gains and losses, the revenue agent (RA) used records received from Coinbase to reconstruct them, matching purchases and sales on a "first in, first out" basis. The RA determined that petitioner during 2013–2017 realized short- and long-term capital gains and losses from transactions in BTC, ETH, and LTC as follows:

3

[*3]

| Year | Currency Type | Type of Gain/Loss | Proceeds | Basis | Gain/Loss |
|------|------|------|------|------|------|
| 2013 | BTC | S-T | $102,560 | $27,160 | $75,400 |
| 2014 | BTC | S-T | 795,046 | 830,454 | (35,408) |
| 2015 | BTC | S-T | 29,881 | 44,006 | (14,125) |
| 2015 | BTC | L-T | 897 | 803 | 94 |
| 2016 | BTC | L-T | 56,219 | 32,797 | 23,422 |
| 2017 | BTC | S-T | 7,756,436 | 7,107,431 | 649,005 |
| 2017 | ETH | S-T | 11,485,625 | 8,302,715 | 3,182,910 |
| 2017 | LTC | S-T | 814,860 | 580,146 | 234,714 |
| 2017 | BTC | L-T | 102,557 | 27,992 | 74,565 |

Taking into account the amounts shown above, the RA determined that petitioner had, at the beginning of 2015, 2016, and 2017, short-term capital loss carryforwards of ($35,408), ($49,439), and ($26,017), respectively. The RA accordingly determined that petitioner had a short-term capital gain of $75,400 for 2013, no taxable gains for 2014–2016, and taxable gains as follows for 2017:

| | |
|------|------|
| S-T Capital Gain | $4,066,629 |
| Less, S-T Loss Carryforward | (26,017) |
| Net S-T Capital Gain | 4,040,612 |
| L-T Capital Gain | 74,565 |
| Total Taxable Gain | $4,115,177 |

On May 19, 2021, the IRS issued petitioner a timely notice of deficiency determining, on the basis of the calculations shown above, tax deficiencies of $12,310 for 2013 and $1,572,391 for 2017, plus accuracy-related penalties. On January 17, 2023, the parties filed a Stipulation of Settled Issues in which they agreed that the amounts of gains and losses determined in the notice of deficiency for each year are correct. On January 19, 2023, the parties filed a First Supplemental Stipulation of Settled Issues in which they agreed that, if the deficiency for 2013 is sustained, petitioner is liable for a 20% accuracy-related penalty under section 6662(a) for that year, but for no penalty for 2017. The sole issue

**[\*4]** remaining for decision is whether petitioner owes tax on the capital gains, as set forth above, that he realized in 2013 and 2017.[2]

OPINION

Gross income "means all income from whatever source derived," including "[g]ains derived from dealings in property." § 61(a)(3). Gain derived from the disposition of property equals the amount realized by the taxpayer in excess of his adjusted basis. § 1001(a). Petitioner does not dispute that the virtual currency assets in which he transacted during 2013–2017 were "capital assets" in his hands. § 1221(a); *see Strashny v. Commissioner*, T.C. Memo. 2020-82, 119 T.C.M. (CCH) 1565; Rev. Rul. 2019-24, 2019-44 I.R.B. 1004 (ruling that cryptocurrency is a type of virtual currency); I.R.S. Notice 2014-21, § 4 Q&A-1, 2014-16 I.R.B. 938, 938 (stating that virtual currency is treated as property for Federal income tax purposes); *id.*, Q&A-7, 2014-16 I.R.B. at 939 (stating that virtual currency can be a capital asset in the hands of a taxpayer).

Petitioner was thus taxable for 2013 and 2017 on the net capital gains he realized from virtual currency transactions. Short-term capital gains arise from the sale or exchange of assets held for one year or less. § 1222(1). Long-term capital gains arise from the sale or exchange of assets held for more than one year. § 1222(3).

Petitioner does not dispute the amount or character of the net capital gains determined in the notice of deficiency for 2013 and 2017. But he contends that the virtual currency assets that gave rise to these gains "were completely wiped out" in 2020, during the early days of the COVID epidemic. He represents that he had taken out a large loan to finance his cryptocurrency transactions; that BTC and other virtual currencies declined precipitously in a single day; that he was unable to meet a margin call; and that his virtual currency positions were liquidated at a very substantial loss. He asserts that the actions (or inaction) of the U.S. Government in response to the COVID epidemic "directly caused [that] harm" and that, "under the Clean Hands doctrine of US law," the IRS should be estopped from collecting tax on his 2013 and 2017 gains.

---

[2] The notice of deficiency made two other adjustments for 2017: disallowance of a $4,050 personal exemption petitioner had claimed and a determination that he was liable for net investment income tax of $254 under section 1411. These adjustments were purely computational, triggered by the large adjustment to his 2017 taxable income, and they are not separately at issue.

**[\*5]**     Petitioner's argument has no legal basis.  The doctrine of estoppel can be invoked against the United States only in the rarest of circumstances.  *See Schuster v. Commissioner*, 312 F.2d 311, 317 (9th Cir. 1962), *aff'g in part, rev'g in part* 32 T.C. 998 (1959) *and First W. Bank & Tr. Co. v. Commissioner*, 32 T.C. 1017 (1959); *Estate of Stein v. Commissioner*, 37 T.C. 945, 952 (1962); *Howe v. Commissioner*, T.C. Memo. 2020-78, 119 T.C.M. (CCH) 1530, 1534 (citing *Schuster v. Commissioner*, 312 F.2d at 317).  In any event, the "unclean hands" principle is designed to withhold equitable relief from one who has acted improperly.  *See Stafford v. Rite Aid Corp.*, 998 F.3d 862, 865 (9th Cir. 2021).  Respondent is not seeking equitable relief but is endeavoring to recover taxes determined to be due from petitioner under the Internal Revenue Code.  And while petitioner may disagree with the Government's policy response to the COVID epidemic, he has not shown that any agency of the Government (much less the IRS) acted improperly.

When relevant, the "unclean hands" defense applies only to conduct immediately related to the cause in controversy.  *See Seller Agency Council, Inc. v. Kennedy Ctr. for Real Estate Educ., Inc.*, 621 F.3d 981, 986–87 (9th Cir. 2010).  The Government's actions in response to the COVID epidemic have no relationship whatever to the determination of petitioner's 2013 and 2017 tax liabilities.  Those governmental actions occurred in 2020, three years after petitioner had realized the most recent gains in question.

A fundamental tenet of the Federal income tax is the "annual accounting principle."  *See Elec. & Neon, Inc. v. Commissioner*, 56 T.C. 1324, 1332 (1971), *aff'd without published opinion*, 496 F.2d 876 (5th Cir. 1974); *Blagaich v. Commissioner*, T.C. Memo. 2016-2, 111 T.C.M. (CCH) 1006, 1009.  This principle dictates that a taxpayer's income for a particular year be calculated on the basis of the events occurring during that year.  Congress has mitigated this principle to some degree by allowing the carryback and carryforward of certain losses and credits.  But while corporations generally may carry capital losses both forward and back, § 1212(a)(1), Congress has been less generous in the case of individual taxpayers.  For them, the excess of capital losses over capital gains recognized for any year may be carried only to "the succeeding taxable year."  § 1212(b)(1).  Any capital losses petitioner realized in 2020 are thus irrelevant in determining his tax liabilities for 2013 and 2017.

**[*6]**     To implement the foregoing,

*Decision will be entered for respondent with respect to the deficiencies and the penalty for 2013, and for petitioner with respect to the penalty for 2017.*